781 A.2d 781

**MEDICAL MUTUAL LIABILITY INSURANCE SOCIETY OF MARYLAND**

v.

**Williette DAVIS, et al.**

No. 59, Sept. Term, 1999.

Court of Appeals of Maryland.

Sept. 14, 2001.

Albert D. Brault (John F. Brault, Brault, Graham, Scott & Brault, L.L.C., on brief), Rockville, for appellant.

Robert G. Samet (Martin Trpis, Ashcraft & Gerel, L.L.P., on brief), Rockville, for appellees.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY,* RAKER, WILNER, CATHELL and HARRELL, JJ.

ELDRIDGE, Judge.

This case presents the single question of when post-judgment interest begins to accrue on a money judgment for tort damages, based on a jury verdict, when the judgment is subsequently reduced, via a remittitur, by the trial court. The defendant, Medical Mutual Liability Insurance Society of Maryland, asks us to determine whether the Circuit Court erred as a matter of law in awarding post-judgment interest, on the reduced judgment, from the date of the original judgment.

The plaintiffs, Williette Davis and Massaquoi Kamara, filed in the Circuit Court for Prince George's County wrongful death and survivor actions against Doctor Vibhakar Mody, based on alleged negligence in connection with the birth of their son, Sana Kpehe Kamara. The child died when he was about two years old, allegedly as a result of the negligence at the time of his birth.[1] On November 7, 1996, the jury found Dr. Mody negligent and returned verdicts in favor of Williette Davis and Massaquoi Kamara, individually, on the wrongful death claims, and a verdict in favor of the estate of Sana Kpehe Kamara on the survivor claim. On November 13, 1996,

---

* Rodowsky, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

1. As the only issue in this case relates to post-judgment interest, we need not set forth the underlying facts of the medical malpractice claims.

a judgment was entered on the Circuit Court's docket as follows:

| Estate of Sana Kpehe Kamara: | |
|---|---|
| Medical Expenses | $1,313,283.30 |
| Noneconomic Damages | $2,000,000.00 |
| | |
| Williette Davis: | |
| Noneconomic Damages | $1,000,000.00 |
| | |
| Massaquoi Kamara: | |
| Noneconomic Damages | $1,000,000.00. |

Two days later, on November 15, 1996, Dr. Mody filed a motion for a new trial or, in the alternative, for a remittitur. After numerous pleadings, replies, memoranda, and hearings, the Circuit Court filed an opinion and order on September 11, 1997, making the following determinations. First, the court accepted the parties' suggestion that the noneconomic damages awarded to the estate of Sana Kpehe Kamara be reduced from $2,000,000.00 to $350,000.00, in light of the then cap on noneconomic damages set forth in Maryland Code (1974, 1998 Repl.Vol.), § 11–108(b) of the Courts and Judicial Proceedings Article. Second, the court "denied Defendants' Motion for a New Trial, or in the Alternative, Motion for Remittitur, for the noneconomic award to the parents." Thus, the court did not disturb the wrongful death judgments entered in favor of Williette Davis and Massaquoi Kamara, individually, because the court "found that the jury awarded these amounts based upon credible evidence and th[e] court was unwilling to invade the jury's province in that regard."[2] Third, the court granted in part the defendant's motion for a new trial or a remittitur, limited to the issue of medical expenses awarded to the estate of Sana Kpehe Kamara.

In light of the Circuit Court's rulings, the clerk, on September 11, 1997, entered on the docket a "total judgment [of] $2,350,000.00 with costs" against the defendants, subject to the

---

**2.** The statutory cap on noneconomic damages did not apply to the parents' individual noneconomic damage awards because their claims arose before the Legislature made the cap applicable to wrongful death actions.

estate's acceptance of the remittitur. On September 25, 1997, the estate accepted a remittitur reducing the medical expense portion of the survivorship award to zero, and thus reducing the entire survivorship award to $350,000.00. Therefore, the total judgment in favor of the plaintiffs for $2,350,000.00 became final on September 25, 1997.

The plaintiffs then sought payment of the judgment from Dr. Mody's insurance carrier, Medical Mutual Liability Insurance Society of Maryland (Medical Mutual). On February 19, 1998, Medical Mutual tendered payment of Dr. Mody's insurance policy liability limit of $1,000,000.00 plus post-judgment interest in the amount of $95, 288.32.[3] The post-judgment interest was calculated from September 25, 1997, the date of the plaintiffs' acceptance of the remittitur.

The plaintiffs subsequently filed, directly against Medical Mutual, a "Request for Writ of Garnishment for Post Judgment Interest," seeking additional post-judgment interest, on the reduced judgment, in the amount of $206,670.58.[4] They argued that post-judgment interest should accrue from the date of the original jury verdict assessing liability, which was November 7, 1996. After a hearing, the Circuit Court awarded to the plaintiffs post-judgment interest on the reduced judgment amount but accruing from the date of the original judgment entered by the court on November 13, 1996.

Medical Mutual then filed an appeal to the Court of Special Appeals. Prior to argument in the Court of Special Appeals, this Court issued a writ of certiorari. *Medical Mutual Liability Insurance Society of Maryland v. Williette Davis*, 355 Md. 610, 735 A.2d 1105 (1999).

---

**3.** The insurance policy issued by Medical Mutual required the payment of post-judgment interest in addition to the liability insurance limit.

**4.** No issue has been raised in this case regarding the procedure employed by the plaintiffs. The same procedure, under somewhat similar circumstances, was followed in *Brown v. Medical Mutual,* 90 Md.App. 18, 21, 599 A.2d 1201, 1205, *cert. denied,* 326 Md. 366, 605 A.2d 101 (1992).

As previously mentioned, Medical Mutual raises a single issue on appeal, namely whether the Circuit Court erred as a matter of law in making an award of post-judgment interest from the date of the original judgment after having reduced the judgment pursuant to Medical Mutual's post-judgment motions. Medical Mutual contends that interest on a tort judgment begins to run from the "date of entry of the judgment," and that in the present case, such entry occurred on September 25, 1997, the date the plaintiffs accepted a remittitur on the jury verdict award and the date on which the judgment became final and appealable. The plaintiffs agree that interest on a tort judgment begins to run from the date of entry of the judgment. They contend, however, that in the present case such entry occurred on November 13, 1996, the date of the original entry of judgment upon the jury verdict.

Under Maryland Code (1974, 1998 Repl.Vol.), § 11–107(a) of the Courts and Judicial Proceedings Article, and Maryland Rule 2–604(b), post-judgment interest accrues at the rate of 10% per annum "from the date of entry" of the judgment.[5] The "date of entry" of a judgment is the date on which the clerk of the court makes a written record of the judgment pursuant to Rule 2–601.[6] In this case, there were two differ-

---

**5.** Section 11–107(a) of the Courts and Judicial Proceedings Article reads as follows:

"(a) *Legal rate of interest on judgments.*—Except as provided in § 11–106 of this article, the legal rate of interest on a judgment shall be at the rate of 10 percent per annum on the amount of judgment."
Rule 2–604(b) states:

"(b) **Post-judgment interest.** A money judgment shall bear interest at the rate prescribed by law from the date of entry."

**6.** Rule 2–601 provides in pertinent part as follows:

"**Rule 2–601. Entry of judgment.**

(a) **Prompt entry—Separate document.** Each judgment shall be set forth on a separate document. Upon a general verdict of a jury or upon a decision by the court allowing recovery only of costs or a specified amount of money or denying all relief, the clerk shall forthwith prepare, sign, and enter the judgment, unless the court orders otherwise. Upon a special verdict of a jury or upon a decision by the court granting other relief, the court shall promptly review the form of the judgment presented and, if approved, sign it, and the

ent times when "judgments" were entered on the docket: November 1996 and September 1997. Nonetheless, as November 13, 1996, was the first date on which there was "entry" of a money judgment, the language of Rule 2–604(b) indicates that post judgment interest would properly begin to run from that date.

In support of its argument that post-judgment interest should not have begun to run until September 25, 1997, Medical Mutual relies on the definitions of "Judgment" and of "Money judgment" set forth in Rules 1–202(n) and 1–202(p). Those definitions are as follows:

"(n) **Judgment.** 'Judgment' means any order of court final in its nature entered pursuant to these rules."

\* \* \*

■ "(p) **Money judgment.** 'Money judgment' means a judgment determining that a specified amount of money is immediately payable to the judgment creditor. \* \* \* "

Medical Mutual contends that, "[f]or an order to be 'final in its nature,' it must be both appealable and enforceable under the Maryland Rules. \* \* \* [W]hen a party files a motion for new trial in accordance with Maryland Rule 2–533, the Circuit Court retains jurisdiction to affirm, modify, amend, or vacate the judgment. Maryland Rule 8–202(c). Therefore, the judgment cannot be considered 'final in its nature.' For this reason, the Court of Appeals held that the order disposing of the post-trial motion becomes the only final and appealable judgment in the case. *B & K Rentals v. Universal Leaf*

clerk shall forthwith enter the judgment as approved and signed. A judgment is effective only when so set forth and when entered as provided in section (b) of this Rule. Unless the court orders otherwise, entry of the judgment shall not be delayed pending determination of the amount of costs.

(b) **Method of entry—Date of judgment.** The clerk shall enter a judgment by making a record of it in writing on the file jacket, or on a docket within the file, or in a docket book, according to the practice of each court, and shall record the actual date of the entry. That date shall be the date of the judgment."

*Tobacco Co.,* 319 Md. 127, 132, 571 A.2d 1213 (1990)...." (Appellant's brief at 6–7).

The flaw in Medical Mutual's argument is that the judgment of November 13, 1996, was final in its nature and was appealable at the time of its entry on November 13, 1996. Furthermore, absent any subsequent action being taken, it was "payable to the judgment creditor." *See* Rule 2–632(b). If no post-judgment motions were filed, it would be the only "money judgment" entered in the case. Consequently, on the date of entry, the November 1996 judgment would appear to have been a "judgment" within the definitions set forth in Rules 1–202(n) and 1–202(p) and thus a "judgment" for purposes of Rule 2–604(b).

Medical Mutual's theory seems to be that any order of a court, which would be a "judgment" within the meaning of Rules 1–202(n) and 1–202(p) at the time of entry, is actually not a judgment within the meaning of those rules if any action is taken after the date of entry which has the effect of abrogating the order's finality for purposes of appeal. In the case at bar, Medical Mutual's motion under Rule 2–533 for a remittitur or new trial, filed within ten days of the November 13, 1996, judgment, rendered the November 13th judgment nonfinal for purposes of appeal. *See* Rule 8–202(c); *B & K Rentals v. Universal Leaf Tobacco Co., supra,* 319 Md. at 132, 571 A.2d at 1216 ("Consequently, 'when a motion to alter or amend an otherwise final judgment [or a motion for new trial] is filed within ten days after the judgment's entry, the judgment *loses its finality for purposes of appeal,*'" quoting *Unnamed Atty. v. Attorney Griev. Comm'n,* 303 Md. 473, 486, 494 A.2d 940 (1985), emphasis supplied, brackets in original).[7]

---

7. Rule 8–202(c) provides as follows:

"**(c) Civil action-Post judgment motions.** In a civil action, when a timely motion is filed pursuant to Rule 2–532, 2–533, or 2–534, the notice of appeal shall be filed within 30 days after entry of (1) a notice of withdrawing the motion or (2) an order denying a motion pursuant to Rule 2–533 or disposing of a motion pursuant to Rule 2–532 or 2–534. A notice of appeal filed before the withdrawal or

If Medical Mutual's theory were correct, and if the word "judgment" in the Maryland Rules meant only a "judgment" not susceptible of losing its finality by subsequent action, numerous rules would make little or no sense. For example, Rule 2–533 itself, as well as Rules 2–532(b) and 2–534, all provide for various motions to be filed "within ten days after entry of judgment," and, as pointed out above, such motions cause judgments to lose their finality for purposes of appeal. These rules obviously treat as "judgments" orders similar to the order entered in this case on November 13, 1996. They specifically deal with "judgments" which lose their finality because motions are filed within ten days. Rules 2–532, 2–533, and 2–534 would be nonsensical if they were using the word "judgment" in accordance with Medical Mutual's theory. Other rules also use the word "judgment" to include an order which is final at the time of entry even though subsequent action may cause the order to lose its finality for purposes of appeal. *See, e.g.,* Rules 2–522(a), 2–535, 2–601, 2–611, 2–613(f), 2–614, 2–615, 2–622, 2–632.

Accordingly, the entry of judgment on November 13, 1996, would seem to constitute the "entry" of a "money judgment" within the meaning of Rule 2–604(b). We do not, however, intend to suggest that post-judgment interest always begins to accrue whenever a money judgment is entered and is final at the time of entry. Rule 2–604(b) must be applied to various situations in accordance with the purpose of post-judgment interest and the considerable case-law governing the running of post-judgment interest.

This Court has stated that the "purpose of post-judgment interest is obviously to compensate the successful suitor for the same loss of the use of the monies represented by a judgment in its favor, and the loss of income thereon, between the time of entry of the judgment *nisi*—when there is a judicial determination of the monies owed it—and the satisfaction of the judgment by payment." *I.W. Berman Prop. v.*

---

disposition of any of these motions does not deprive the trial court of jurisdiction to dispose of the motion."

*Porter Bros.*, 276 Md. 1, 24, 344 A.2d 65, 79 (1975).[8] In the present case, upon the entry of judgment on November 13, 1996, there was a judicial determination that the plaintiffs were entitled to at least $2,350,000.00 (the ultimate reduced amount), and no subsequent action changed this judicial determination. While the judgment entered on November 13, 1996, lost its finality for purposes of appeal, and might not have been effective for some other purposes, it did not disappear. Furthermore, while the actual November 1996 judgment was later modified, the minimum amount of $2,350,000.00 owed to the plaintiffs was not modified. Therefore, in light of the purpose of post-judgment interest, the plaintiffs were entitled to the loss of income on the $2,350,000.00 from November 13, 1996. Presumably, Medical Mutual earned interest on that sum during the ten-month period from November 1996 to September 1997.

Although the parties have not called to our attention any prior Maryland cases involving the same circumstances as those in the present case, the principles set forth in prior cases clearly support the position of the plaintiffs-appellees and the decision of the Circuit Court. For example, let us suppose that the Circuit Court in September 1997, instead of simply reducing the amount of the November 1996 judgment, had set aside that judgment and either entered a judgment notwithstanding the verdict pursuant to Rule 2–532 or awarded a new trial pursuant to Rule 2–533. In this hypothetical scenario, if the plaintiffs had taken an appeal, and if the Court of Special Appeals had reversed the September 1997 judgment and had held that the November 1996 judgment should not have been set aside, post-judgment interest would run from November 1996 rather than from the appellate court's mandate. The filing of motions under Rules 2–532 or 2–533 within

---

8. At the time of the decision in *I.W. Berman* and other earlier cases, the post-judgment interest rule provided for the running of post-judgment interest on money judgments at law from the jury's verdict or the judgment *nisi* instead of from the entry of final judgment. Except for the change to final judgment, however, the basic principles set forth in the earlier cases remain generally applicable.

ten days of the November 13, 1996, judgment would not have prevented post-judgment interest from accruing as of November 13, 1996. *See, e.g., Cook v. Toney,* 245 Md. 42, 50, 224 A.2d 857 (1966) ("if the motion of [the defendant] Toney for a new trial had been *overruled* or if the granting of a new trial had ... been *reversed* by this Court on appeal, the plaintiff would have been entitled to [post-judgment] interest from the date of the original [judgment] against Toney"); *Hodgson v. Phippin,* 159 Md. 97, 101, 150 A. 118 (1930) (where the delay after the verdict was caused by a motion for a new trial, post-judgment interest ran from the date of the verdict, as "a litigant should not be penalized for delay from motions made"); *Brown v. Medical Mutual,* 90 Md.App. 18, 21, 599 A.2d 1201, 1202, *cert. denied,* 326 Md. 366, 605 A.2d 101 (1992) ("as successful plaintiffs in a case in which the trial court's grant of j.n.o.v. has been reversed on appeal, they are entitled to post-judgment interest from the date of entry of the original judgment on the verdict").

■ The above-cited Maryland cases stand for the principle that post-judgment motions or appeals, which may cause a money judgment for a plaintiff to lose some aspects of its finality, ordinarily do not have the effect of postponing the accrual of post-judgment interest from the date that the original money judgment was entered. Cases in other jurisdictions, under rules or statutes similar to Maryland Rule 2–604(b), are generally to the same effect. *See, e.g., Tinsley v. Sea–Land Corporation,* 979 F.2d 1382, 1383 (9th Cir.1992), *cert. denied,* 510 U.S. 817, 114 S.Ct. 69, 126 L.Ed.2d 38 (1993); *H.J. Inc. v. Flygt Corporation,* 925 F.2d 257, 261–262 (8th Cir.1991); *Northern Natural Gas Company v. O.W. Hegler,* 818 F.2d 730, 737–738 (10th Cir.1987); *Isaacson Structural Steel Co. v. Armco Steel Corp.,* 640 P.2d 812, 818 (Alaska 1982); *Pascack Valley Bank and Trust Co. v. Ritar Ford Sales,* 6 Conn.Cir.Ct. 646, 295 A.2d 667 (1972); *Knapp and State of Maryland v. Shepherd,* 741 A.2d 1026 (Del.1999); *Bell v. Westinghouse Electric Corp.,* 507 A.2d 548, 555–556 (D.C.App.1986); *CRS Sirrine, Inc. v. Dravo Corp.,* 219 Ga. App. 301, 304–305, 464 S.E.2d 897, 901 (1995); *Lippert v.*

*Angle,* 215 Kan. 626, 527 P.2d 1016 (1974); *Reimers v. Frank B. Connet Lumber Co.,* 273 S.W.2d 348 (Mo.1954); *Hewitt v. General Tire and Rubber Co.,* 5 Utah 2d 379, 302 P.2d 712 (1956).

Moreover, under circumstances similar to those in the present case, where a judgment in favor of a plaintiff is subsequently reduced via the plaintiff's acceptance of a remittitur, courts elsewhere consistently hold that post-judgment interest runs from the date of the original judgment. *See, e.g., Dunn v. HOVIC,* 13 F.3d 58, 61–62 (3rd Cir.1993) ("We see no reason why Dunn should be disadvantaged in the calculation of interest because the jury overestimated his damages"); *Coal Resources, Inc. v. Gulf & Western Industries,* 954 F.2d 1263, 1275 (6th Cir.1992) ("The remittitur merely reduced the damages by a distinct amount easily determined from the facts of the case. * * * [W]e ORDER that interest on the damages awarded in this case be calculated from the date of the original District Court judgment"); *Schulte v. Smith,* 708 So.2d 138, 140 (Ala.1997) ("We conclude that interest on the remitted judgment ... accrues from the date the trial court entered the original judgment"); *Scioto Memorial Hospital Association, Inc. v. Price Waterhouse,* 74 Ohio St.3d 474, 479, 659 N.E.2d 1268, 1273–1274 (1996) (where the plaintiff "chooses to accept a remittitur," then "post-judgment interest should run from the date of the original ... judgment entry").

Under the circumstances of the case at bar, the Circuit Court correctly held that post-judgment interest began to accrue on November 13, 1996, the date the original judgment was entered.

*JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AFFIRMED. APPELLANT TO PAY THE COSTS.*