900 A.2d 283

**Bernice COHN**

v.

**Ernest FREEMAN et al.**

No. 611, Sept. Term, 2005.

Court of Special Appeals of Maryland.

June 6, 2006.

256

C. Edward Hartman, III (John R. Griffin, Hartman and Egeli, L.L.P. on the brief), Annapolis, MD, for appellant.

Gregory J. Swain, Annapolis, MD, for appellee.

Panel: DAVIS, KRAUSER and WOODWARD, JJ.

DAVIS, J.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellant, Bernice Cohn, filed the instant appeal, aggrieved by the Order of the Circuit Court for Anne Arundel County, which established the date to begin the accrual of post-judgment interest of her award of $151,838 as of November 14, 2003, rather than January 14, 2000. The case reaches this Court for the third time, and appellant and appellees, Ernest Freeman, Redge Mahaffey, Louis Biosca, Kerry Hurlebaus, and XLG Cellular Partnership (XLG), agree that the facts have been thoroughly set forth in the two unreported opinions, *Ernest Freeman, et al. v. Bernice Cohn,* et al, No. 1673,

September Term, 2000, 142 Md.App. 713 (filed Jan. 10, 2002) (*Freeman I* ), and *Ernest Freeman, et al. v. Bernice Cohn,* No. 2231, September Term, 2003, 159 Md.App. 739 (filed November 23, 2004) (*Freeman II* ). We shall recite briefly the facts as set forth in *Freeman II* in order to provide context for this appeal.

The parties were involved in a partnership, XLG, for the purpose of pooling their applications for cellular licenses awarded by lottery by the Federal Communications Commission (FCC). *Freeman II,* slip op. at 1. The group also intended to profit from the sale of any licenses awarded. *Id.* The partnership applied to the first lottery with several partners winning licenses and the resulting cellular systems. *Id.* at 3 (citing *Freeman I* ). The profits, totaling over eight million dollars, were distributed evenly among the partners. *Id.* In a second lottery, Hurlebaus was selected as the winner of the cellular licensing rights for the RSA services for Lebanon, Pennsylvania and Claibourne, Louisiana. *Id.* at 3–4 (Quoting *Freeman I* ).

Hurlebaus, by the time he was selected to receive the cellular licenses, had become involved in the ownership of several radio stations, including WMTO in Florida. *Id.* at 4. Through a series of maneuvers, a majority of the XLG group invested in WMTO. *Id.* The WMTO group entered into an agreement and, additionally, Hurlebaus promised the group investing in WMTO that they would not lose any money on their investment. *Id.* at 5. More than two years after the agreement was entered into by the WMTO group, Hurlebaus wired $1.56 million dollars to the XLG account, without explanation. *Id.* Aware that the Lebanon RSA system had been sold, it was assumed that the wire transfer represented the profits from the sale minus Hurlebaus' one-fifth share. *Id.* Mahaffey deducted $603,352 from the wire and distributed the remaining balance equally among the other XLG partners. *Id.* The deducted amount was the sum required to reimburse the WMTO group for their losses. *Id.* at 6.

Appellant sued for her one-fourth share of the $603,352. The case was tried without a jury and the court found in favor of appellant in the amount of $151,308, plus pre-judgment interest at 6% from December 1, 1993. Appellees appealed and we quote from *Freeman II* the disposition of the appeal and the subsequent remand.

In *Freeman I*, the argument by the defendants was that they had invested the monies in WMTO LP not only in the hope of making a profit but also for the purpose of preserving Hurlebaus's position as a winning applicant for the Lebannon RSA cellular license. Under those circumstances, defendants argue, CA § 9–401(2) authorized their majority action and bound the plaintiff to the agreement of September 1991, without her consent. On that point this Court said:

"[A] partner is [not], as a matter of law, barred from recovery under Section 9–401(2) when the partnership has more than one purpose for making payments. Nevertheless, one purpose of the partner's investment must be for the preservation of its business or property and that purpose must be reasonable. The trial court did not say whether it believed that appellants invested in WMTO with such reasonable purpose in mind. Motivation is generally a factual matter, to be decided by the trier of fact."

Specifically, we directed the circuit court

"to make two factual findings: (1) a determination as to whether the investment into WMTO was made in the ordinary and proper conduct of XLG's business; and (2) a determination as to whether one reasonable purpose of appellant's investment was to preserve the partnership property within the meaning of [CA] Section 9–401(2)."

On remand, the parties agreed to proceed by memoranda and oral argument, based on the unsupplemented trial testimony and exhibits. The circuit court answered both questions in the negative. The lost investments in WMTO LP were not in the ordinary and proper conduct of XLG's business because the circuit court found that "[t]he only

business or purpose of XLG was to distribute the profits resulting from successful applications and sales of cellular licenses."

In rejecting that the lost investments were "for the preservation of [XLG's] business or property," the circuit court analyzed the evidence as set forth below:

-"It is quite clear, based on the circumstances, Mahaffey, Biosca, and Freeman invested in WMTO to make a personal profit. Only when the 'plan' fell through did they claim said investment was for the preservation of XLG's interests."

-The Cohns were not included in the September 1991 meeting.

-They were not alerted to the WMTO LP transaction.

-Nothing in the record suggested that the defendants would have shared profits from WMTO LP had it been successful.

-"[I]t is quite clear, as this Court found before, Defendants' 'investment' in the radio station was purely personal in nature. It was a venture to bail Hurlebaus out of a bad financial situation, and to make some money based on a promise by Hurlebaus that Defendants would not lose any money."

-The defendants, "after the fact[,] tried to claim their motivation or intention was to protect XLG in order to have their personal expense absorbed by XLG."

*Id.* at 7–9 (emphasis in original).

Following the decision by the circuit court, on November 13, 2003, on remand, appellees once again appealed, on December 16, 2003. Their principal argument on appeal, in *Freeman II*, was "that the record compelled a finding that the investment was to preserve an asset of XLG." *Id.* at 10. We disagreed with appellees and, on November 23, 2004, issued an unreported opinion in that case, reasoning:

The purpose of the remand was to give the defendants an opportunity to persuade the finder of fact that the investment by the partners of WMTO LP was both to make a

profit and to protect the interest of XLG in any sale of a Lebanon license awarded to Hurlebaus. It is perfectly clear that the defendants failed to meet their burden of justifying why the plaintiff, an equal partner in XLG, was treated unequally. In addition to the reasons given by the trial court, and presented in bulletin form above, we note the following:

-It is not inconsistent with the known facts for Hurlebaus to have taken off the top of the Lebanon license sale the expenses he incurred in protecting that license with the FCC.

-The defendants never presented a clear explanation of the relationship between money paid to Radionet to acquire WMTO and elimination of any jeopardy to the Lebenon license.

-Other than a witness from the FCC, the person who was in the best position to explain the connection was Hurlebaus, but he testified that there was no connection.

-Even if Hurlebaus's share of the $336,750 purchase price paid by WMTO LP for the assets of Radionet was used by him to clear up some unspecified problems that had adverse FCC implications for the award to him of the cellular license for Lebanon, the individual defendants took an additional $266,602 ($603,352–$336,750) off the top of the $1.56 million wired to XLG. This action reinforces that the defendants were acting in their self interest as partners in WMTO LP and not for the benefit of XLG.

*Id.* at 14–15.

After we affirmed the trial court's decision in *Freeman II,* appellees filed a Motion for Order of Satisfaction on January 13, 2005. The motion asserted that an escrow account had been established, in lieu of an appeal bond, and the account, as of November 30, 2004, contained $270,904.16. The motion also claimed that the parties were unable to agree on the amount due under the judgment and explained that appellees had reached their figure of $268,362.70 based upon the Court of Appeals' decision in *Carpenter Realty Corp. v. Imbesi,* 369

Md. 549, 567, 801 A.2d 1018 (2002). Appellees began the accrual of post-judgment interest in their calculation from November 14, 2003, and their calculation included pre-judgment interest at 6% from December 1, 1993 through November 13, 2003. The motion requested relief in the form of an Order declaring the judgment had been satisfied in the above amount. Appellant filed a response claiming that the amount due was $306,505.73 and that appellees had miscalculated the interest, which should have been calculated from January 14, 2000, the date of the court's original decision. Appellant's calculation included pre-judgment interest for the period of December 1, 1995 through June 14, 2000, and post-judgment interest from June 15, 2000 through January 18, 2004.

A hearing was held and, on April 29, 2005, the court entered an order finding that the commencement date to begin calculating post-judgment interest was November 14, 2003. The Order of Court stated that the case was governed by *Carpenter Realty Corp., supra*. The court, after analyzing the rationale undergirding the opinion, stated:

> In the instant case, the first appellate decision was to vacate and remand the case to the trial court for consideration of two questions that could have totally altered the result of the case. If the trial court had answered those questions affirmatively, rather than negatively, the result would have been a judgment in favor of Defendants not Plaintiff. Thus, it cannot be said that the vacating of the original judgment was intended to preserve Defendants' liability to Plaintiff as originally determined by the trial court. *Vacating the original judgment had the effect of eliminating that judgment and requiring the trial court to enter a new judgment based upon additional fact finding.* That the trial court's second judgment resulted in the same amount had no bearing on the analysis.

Appellant filed this timely appeal, presenting one issue for our review:

> Whether the trial court erred in determining that the appropriate date from which to begin assessing post-judg-

ment interest was November 14, 2003, rather than June 14, 2000[.]

## LEGAL ANALYSIS

Appellant claims that the trial court erred in finding that post-judgment interest began to accrue on November 14, 2003, rather than June 14, 2000. She argues that the proper inquiry is whether the purpose of awarding post-judgment interest has been served. The circumstances under which this case was decided, she asserts, when considered in light of the proper inquiry, can only lead to the conclusion that post-judgment interest should be calculated from the date of the original judgment. Additionally, appellant argues that the trial court's reliance upon *Carpenter Realty Corp.* was misplaced because, in the instant matter, the decision of the trial court was not reversed. The argument is that it was necessary in order to permit the court to make its additional findings, as a procedural matter, to vacate the original order, which did not have the effect of a reversal. This case, she contends, is much closer to *Brown v. Medical Mut. Liab. Ins. Soc'y,* 90 Md.App. 18, 599 A.2d 1201, *cert. denied,* 326 Md. 366, 605 A.2d 101 (1992).

Appellees disagree with appellant's contention that *Carpenter Realty Corp.* is inapplicable to this case. They contend that the case was correctly decided by the trial court and, to vacate a judgment, is the equivalent of a reversal. *See Schlossberg v. Citizens Bank of Maryland,* 341 Md. 650, 672 A.2d 625 (1996). They argue that the true reason for remand was the necessity to make factual findings, which impact on the outcome of the case.

Post-judgment interest is specifically authorized by Maryland Rule 2–604(b). That Rule provides, "A money judgment shall bear interest at the rate prescribed by law from the date of entry." Rule 2–604 replaced Maryland Rule 642, which provided:

A judgment by confession or by default shall be so entered as to carry interest from the time the judgment was ren-

dered. *A judgment on verdict shall be so entered as to carry interest from the date on which verdict was rendered.* A judgment *nisi* entered by the court following a special verdict pursuant to Rule 560 (special verdict) or by the court without jury pursuant to Rule 564 (Trial by Court) shall be so entered as to carry interest from the date of entry of judgment *nisi.* (emphasis supplied.)

*See Brown,* 90 Md.App. at 22, 599 A.2d 1201. Thus, the Court explained that Rule 2–604(b), while simplifying the rule by removing references to judgments *nisi,* was not intended to change the substantive law. *Id.* at 22–23, 599 A.2d 1201. The Court stated, referring to the minutes of the Committee on Rules of Practice and Procedure, that "in the ordinary case when judgment is entered on a jury verdict, it is intended that the judgment will carry interest from the date on which the verdict is entered as a judgment. . . ." *Id.* at 23, 599 A.2d 1201.

Several cases have considered the issue raised by this appeal, albeit in a different context, procedurally. In *Cook v. Toney,* 245 Md. 42, 224 A.2d 857 (1966), the plaintiff sued Toney and two other individuals for damages related to an automobile accident. *Id.* at 44, 224 A.2d 857. The trial concluded on March 29, 1960, with a judgment *nisi* for $5,000 entered against Toney and one other concurrent tortfeasor. *Id.* at 45, 224 A.2d 857. On April 1, 1960, Toney moved for Judgment n.o.v. or, in the alternative, for new trial and, on April 2, 1960, judgment absolute was entered against the concurrent tortfeasor. *Id.* Toney was granted a new trial on April 22, 1960. *Id.* The case finally reached its conclusion on September 20, 1965, when a jury rendered a verdict against Toney, which became a judgment absolute on September 23, 1965. *Id.* at 46, 224 A.2d 857. Thereafter, the plaintiff filed a bill for declaratory judgment against Toney for interest on the judgment from April 2, 1960. *Id.* at 47, 224 A.2d 857. The Bill for Declaratory Judgment was dismissed with prejudice and the court ruled that plaintiff was not entitled to interest on the judgment from April 2, 1960 to October 4, 1965, the date on which the judgment was paid. *Id.* at 47–48, 224 A.2d 857.

The Court explained that the granting of a new trial as to Toney eliminated entirely the judgment *nisi* and the case as to Toney was in the same position as if no trial had been held. *Id.* at 49, 224 A.2d 857. The Court then explained why, under then Maryland Rule 642, no post-judgment interest could be assessed against Toney from the verdict rendered on March 29, 1960. In that regard, the Court stated:

"A judgment on verdict shall be so entered as to carry interest from the date on which the verdict was rendered." (Emphasis supplied). As the verdict of March 29, was completely eliminated by the granting of the new trial on April 22, 1960, that verdict against Toney obviously cannot be made the basis of a later judgment against Toney for any purpose whatever including the date from which interest would run, and, as already observed, the plaintiff-appellant does not so contend.

*Id.* at 50, 224 A.2d 857. The Court continued,

There is no doubt that if the motion of Toney for a new trial had been overruled or if the granting of a new trial had in the limited cases in which the granting of such a motion is appealable, been reversed by this Court on appeal, the plaintiff would have been entitled to interest from March 29, 1960, . . .

*Id.* The Court indeed determined that the plaintiff was not entitled to post-judgment interest as of April 2, 1960:

There can be no question, however, that although the amount of damages was concluded by the judgment of April 2, 1960, against the concurrent tortfeasor, Toney's obligation to pay did not attach until a verdict was rendered against him on September 20, 1965, and the judgment absolute entered on that verdict on September 23, 1965. It was this verdict of September 20, from which interest would run pursuant to the applicable provision of Maryland Rule 642 as indeed this is the first and only verdict in legal contemplation against Toney.

*Id.* at 51, 224 A.2d 857 (citations omitted).

In *Great Coastal Express Inc. v. Schruefer,* 39 Md.App. 88, 383 A.2d 74 (1978), the appellant complained that the trial

court erred in granting post-judgment interest from the date of the original verdict in the case following a mandate from this Court, filed in the circuit court, which was as follows:

'Judgment in favor of Shasta Beverages affirmed; Judgments in favor of Darlin Sue Schruefer, Richard Lynn Schruefer, Barbara Ann Schruefer and Travelers Indemnity Company vacated and remanded for modification and entry of proper judgments in accordance with this opinion....' (Emphasis added.)

*Id.* at 91–92, 383 A.2d 74. The case was remanded following the first appeal, because we determined that the trial court erred in entering a separate judgment for Travelers. *Id.* at 90, 383 A.2d 74. While we could have altered or modified the judgment, we were unable to do so; therefore, remand was necessary. *Id.*

On appeal, following the remand and entry of judgments and interest thereon, we determined that the plaintiffs were entitled to interest from the date of the original judgment in March of 1976, rather than May 31, 1977–the date upon which the court entered its order modifying the judgments. We stated, "In the instant appeal, the verdicts in favor of the plaintiff's below remained wholly undisturbed and unaffected by the technical requirement of our mandate ..." *Id.* at 92, 383 A.2d 74. After distinguishing the case from *Cook, supra,* on the ground that no new trial had been granted, we reasoned:

In this case, the original verdicts were untouched by our action and the plaintiffs (appellees) were the successful suitors as of the date of rendition in March 1976, and, as such, appellees were entitled to interest as of that time.

*Id.* at 92–93, 383 A.2d 74.

We again had the opportunity to consider the date upon which post-judgment interest was to begin to accrue in *Brown, supra,* relied upon by appellant. In that case, following a jury verdict in favor of the plaintiff, the trial court granted the defendant's motion for j.n.o.v. *Brown,* 90 Md.App. at 20, 599 A.2d 1201. The plaintiffs appealed the grant of j.n.o.v. and we reversed the circuit court, issuing a mandate which provided:

Judgment notwithstanding the verdict reversed; judgment entered for appellants [the Browns] on the verdict of the jury; appellee to pay costs.

*Id.* at 20–21, 599 A.2d 1201 (citing *Brown v. Meda,* 74 Md.App. 331, 346, 537 A.2d 635 (1988)). Thereafter, the judgment was paid along with post-judgment interest from the date we issued our mandate to the date the judgment was paid. *Id.* at 21, 599 A.2d 1201. The Browns argued that our reversal of the j.n.o.v. entitled them to interest from the date of the initial judgment. *Id.*

The appellee, Med. Mutual, argued that the circuit court's grant of its motion for j.n.o.v. functioned just as the grant of a new trial, eliminating the original verdict and any interest thereon. *Id.* at 24, 599 A.2d 1201. We held in favor of the appellant, Brown, that post-judgment interest was to begin accruing from the date of the original judgment for two reasons. *Id.* at 25, 599 A.2d 1201. First, the case was controlled by *Cook* and, as the *Cook* Court explained, the grant of the motion for j.n.o.v. was reversed, entitling appellant to interest from the date of the original verdict. *Id.* Specifically, we said: "Here, the j.n.o.v. was, in fact, reversed on appeal, which means that the original jury verdict must be reinstated as if it had never been eliminated by the trial court. A reversal on appeal of a j.n.o.v. is, in effect, a finding that plaintiff's original judgment always existed." *Id.* (citations omitted). Secondly, in accordance with Md. Rule 2–532(f)(1)(A), when reversing a j.n.o.v., "we directed that judgment be entered 'on the original verdict.' " *Id.* Therefore, the original verdict was the only verdict in legal contemplation. *Id.*

The Court of Appeals considered when post-judgment interest should begin to accrue, where the trial court has granted a remittitur. *Medical Mut. Liab. Ins. Soc'y of Maryland v. Davis,* 365 Md. 477, 478, 781 A.2d 781 (2001). A jury found for the plaintiffs-Davis, Kamara and the estate of their son—in a wrongful death and survivor action on November 7, 1996. *Id.* at 478, 781 A.2d 781. The judgment was entered on the

docket on November 13, 1996 and, on November 15, 1996, the defendant filed a motion for new trial or remittitur. *Id.* at 479, 781 A.2d 781. On September 11, 1997, the court made a determination as to the motion filed by the defendant, deciding to reduce the non-economic damages to the estate, deny the motion with respect to the non-economic damages of the parents and to grant the motion as to the medical expenses awarded the estate. *Id.* at 479, 781 A.2d 781.

On September 11, 1997, the clerk entered on the docket a total judgment for the plaintiffs, subject to their acceptance of the remittitur which occurred on September 25, 1997. *Id.* at 479–80, 781 A.2d 781. The plaintiffs sought payment from the defendant's insurer, appellant, Med. Mutual, who paid up to the limit of the policy, along with interest from September 25, 1997. *Id.* at 480, 781 A.2d 781. The plaintiffs filed a claim for post-judgment interest on the reduced amount of the award from November 7, 1996. *Id.* Following a hearing, the trial court granted post-judgment interest from November 13, 1996. *Id.*

The Court concluded that the language of Md. Rule 2–604(b), Md. Rule 2–601 and Maryland Code (1974, 1998 Repl. Vol.), § 11–107(a) of the Courts and Judicial Proceedings Article, directs that post-judgment interest should begin to run from November 13, 1996, which constitutes the first money judgment in the case. *Id.* at 481–82, 781 A.2d 781. The appellant argued that post-judgment interest should not have begun to accrue until September 25, 1997, based upon Md. Rule 1–202(n) and 1–202(p), because the Order was not final, nor was it immediately payable in light of their motion for new trial or remittitur. *Id.* at 482–83, 781 A.2d 781. The Court disagreed, stating that the order was final and appealable at the time of its entry and, absent any subsequent action, it was payable to the judgment creditor. *Id.* at 483, 781 A.2d 781. Finally, the Court explained that Rule 2–604(b) must be applied to various situations in accordance with the purpose of post-judgment interest and the considerable case-law governing the running of post-judgment interest. *Id.* at 484, 781 A.2d 781.

The purpose of post-judgment interest was explained by the Court in *I.W. Berman Properties v. Porter Bros. Inc.*, 276 Md. 1, 344 A.2d 65 (1975). There, the Court reasoned, *id.* at 24, 344 A.2d 65:

The purpose of the allowance of prejudgment interest is to compensate the aggrieved party for the loss of the use of the principal liquidated sum found due it and the loss of income from such funds. The purpose of post-judgment interest is obviously to compensate the successful suitor for the same loss of the use of the monies represented by the judgment in its favor, and the loss of income thereon, between the time of the entry of the judgment *nisi*—when there is a judicial determination of the monies owed it—and the satisfaction of the judgment by payment.

With this purpose in mind, the *Davis* Court observed:

In the present case, upon the entry of judgment on November 13, 1996, there was a judicial determination that the plaintiffs were entitled to at least $2,350,000.00 (the ultimate reduced amount), and no subsequent action changed this judicial determination. While the judgment entered on November 13, 1996, lost its finality for purposes of appeal, and might not have been effective for some other purposes, it did not disappear. Furthermore, while the actual November 1996 judgment was later modified, the minimum amount of $2,350,000.00 owed to the plaintiffs was not modified. Therefore, in light of the purpose of post-judgment interest, the plaintiffs were entitled to the loss of income on the $2,350,000.00 from November 13, 1996.

365 Md. at 485, 781 A.2d 781.

In its latest pronouncement, the Court of Appeals considered the issue in yet another procedural context. *See Carpenter Realty Corp. v. Imbesi*, 369 Md. 549, 801 A.2d 1018 (2002). In that case, a claim was brought by Dennis Imbesi, the personal representative of the estate of Thomas L. Imbesi, appellee, against appellant to recover an outstanding debt owed the estate under a stock redemption agreement. *Id.* at 552, 801 A.2d 1018. Following a bench trial on March 22,

1995, the circuit court entered judgment for the estate in the amount of $57,447.67 and concluded that the appellant had not met its burden to establish the right to set-off on its counterclaim. *Id.* at 553, 801 A.2d 1018. This Court reversed the judgment of the circuit court and remanded the case for a rehearing. *Id.* at 554, 801 A.2d 1018. The circuit court held a second hearing, finding in favor of appellant, extinguishing the appellee's complaint. *Id.* at 554–55, 801 A.2d 1018. The appellee appealed and we affirmed the circuit court's judgment. *Id.* at 555, 801 A.2d 1018. The Court of Appeals reversed that decision on January 19, 2000, remanding the case to this Court with instructions to reverse the circuit court and remand the matter for further proceedings consistent with its opinion. *Id.* at 555–56, 801 A.2d 1018.

On March 1, 2000, the appellees petitioned the circuit court for entry of judgment in the estate's favor in the original amount of the judgment, plus pre and post-judgment interest. *Id.* at 556, 801 A.2d 1018. The appellant responded that the estate was entitled to the judgment, but not the pre and post-judgment interest. *Id.* The circuit court held a hearing and issued an opinion which did not include pre and post-judgment interest. *Id.* at 557, 801 A.2d 1018. The appellee appealed to this Court, alleging that the circuit court erred in not granting pre or post-judgment interest. *Id.* at 558, 801 A.2d 1018. We concluded, in an unreported opinion, that the court did not abuse its discretion by refusing to grant pre-judgment interest, but that the appellee was entitled to post-judgment interest from the date of the original verdict in its favor, April 4, 1995. *Id.* Appellant applied for *certiorari* to the Court of Appeals and that Court certified the following question:

After a judgment in favor of a plaintiff is reversed and the action remanded for rehearing, is that plaintiff entitled to post-judgment interest on the subsequent judgment in his favor, dating from the original judgment?

*Id.* The issue, as framed by the Court of Appeals, was to discern what constitutes the date of entry of a judgment where the first judgment in the action was reversed and remanded by this Court and subsequent judgments were

entered on the record. *Id.* at 560, 801 A.2d 1018. Stated differently, when does legal liability attach "in the form of a judgment which would trigger the accrual of post-judgment interest?" *Id.*

The Court concluded that there was no obligation to pay post-judgment interest until the circuit court entered its judgment on October 19, 2000. *Id.* at 567, 801 A.2d 1018. The judgment entered on April 10, 1995, the Court held, was eliminated by our reversal of the circuit court's decision. *Id.* To reach its conclusion, the Court traced the history of the case, reviewing the mandates issued on appeal. *Id.* at 560, 801 A.2d 1018. It observed:

> Both this Court and the Court of Special Appeals have the ability to dispose of an appeal by dismissing the action, affirming the judgment, vacating or reversing the judgment, modifying the judgment, remanding the action to a lower court for further consideration, or any combination thereof. *See* Md. Rule 8–604(a). Furthermore, Maryland Rule 8–604(e) states, "[i]n reversing or modifying a judgment in whole or in part, the Court may enter an appropriate judgment directly or may order the lower court to do so." We have held that where our mandate specifically directs the entry of a judgment after remand, post-judgment interest on the award runs from the date of the issuance of the mandate. *See Andrulis v. Levin Construction Corp.*, 331 Md. 354, 378, 628 A.2d 197, 209 (1993) (increasing the circuit court's judgment by $27,812 and specifying that post-judgment interest on this additional amount would run only from the date the mandate issued). In the absence of a specific instruction from this Court to the trial court that the court *must* award post-judgment interest dating back to the entry of the original judgment, such an award should rest with the sound discretion of the trial court.

*Id.* at 560–61, 801 A.2d 1018.

The Court explained that the mandate issued by this Court following the first appeal did not expressly limit the reversal to the issue of appellant's claim for set-off. *Id.* at 561, 801 A.2d 1018. The Court continued:

We have explained that "[w]here a mandate is ambiguous, one must look to the opinion and other surrounding circumstances to determine the intent of the court." *Balducci v. Eberly*, 304 Md. 664, 670, 500 A.2d 1042, 1045 (1985). A reversal is defined as "the annulling or setting aside by an appellate court of a decision of a lower court," *Litman v. Massachusetts Mut. Life Ins. Co.*, 825 F.2d 1506, 1514 n. 11 (11th Cir.1987), while the provision governing the remand of civil cases from an appellate court states:

> If the Court concludes that the substantial merits of a case will not be determined by affirming, reversing or modifying the judgment, or that justice will be served by permitting further proceedings, the Court may remand the case to a lower court. In the order remanding a case, the appellate court shall state the purpose for the remand. *The order of remand and the opinion upon which the order is based are conclusive as to the points decided.* Upon remand, the lower court shall conduct any further proceedings necessary to determine the action in accordance with the opinion and order of the appellate court. Md. Rule 8–604(d)(1) (emphasis added).

*Id.* at 561–62, 801 A.2d 1018.

In that regard, the Court stated:

> The Court of Special Appeals's opinion and mandate of August 6, 1996 which reversed the original judgment and remanded the case to the Circuit Court did not contain any language restricting the effect of the reversal so as to leave the original judgment in place.... Neither our mandate disposing of the appeal, nor the text of the opinion as a secondary source specified any intention to have post-judgment interest accrue from the date of the original judgment. Therefore, the first judgment entered in favor of the Estate on April 10, 1995 was eliminated by the Court of Special Appeals's reversal.

*Id.* at 562–63, 801 A.2d 1018.

Our research failed to uncover any decisions directly on point; the procedural posture of this case is distinctly differ-

ent from each of the above cited opinions of this Court and the Court of Appeals. The authorities cited, however, provide guidance for our resolution of the issue presented by this case. Thus, we must, as the Court did in *Carpenter*, trace the history of the case, and review the mandates issued to determine when legal liability attached for appellees.

The original decision was entered on the docket in this case on June 14, 2000. *See* Md. Rule 2–601.[1] Absent any subsequent action, the judgment was final and appealable and ordered a sum certain to be paid in the amount of $151,838, with pre-judgment interest at the rate of six-percent from December 1, 1993. An appeal was taken, and this Court filed a mandate that provided: "Judgment of the Circuit Court for Anne Arundel County vacated; case remanded for further proceedings consistent with this opinion." To vacate means "[t]o annul; to set aside; to cancel or rescind. To render an act void; as, to vacate an entry of record, or a judgment." Black's Law Dictionary 803 (Abridged 5th Edition, 1983); *see also Schlossberg*, 341 Md. at 657–58, 672 A.2d 625. Vacating the circuit court's order effectively rendered the order void; however, the mandate was qualified, insofar as the case was remanded for further proceedings consistent with the opinion. *Cf. Balducci v. Eberly*, 304 Md. 664, 671 n. 8, 500 A.2d 1042

---

1. Md. Rule 2–601 reads, in pertinent part:
   (a) **Prompt Entry—Separate Document.** Each judgment shall be set forth on a separate document. Upon a verdict of a jury or a decision by the court allowing recovery only of costs or a specified amount of money or denying all relief, the clerk shall forthwith prepare, sign, and enter the judgment, unless the court orders otherwise. Upon a verdict of a jury or a decision by the court granting other relief, the court shall promptly review the form of the judgment presented and, if approved, sign it, and the clerk shall forthwith enter the judgment as approved and signed. A judgment is effective only when so set forth and when entered as provided in section (b) of this Rule. Unless the court orders otherwise, entry of the judgment shall not be delayed pending determination of the amount of costs.
   (b) **Method of Entry—Date of Judgment.** The clerk shall enter a judgment by making a record of it in writing on the file jacket, or on a docket within the file, or in a docket book, according to the practice of each court, and shall record the actual date of the entry. That date shall be the date of the judgment.

(1985) ("It has been held that the effect of a general and unqualified reversal of a judgment, order or decree is to nullify it completely and to leave the case standing as if such judgment order of decree had never been rendered, except as restricted by the opinion of the appellate court."); *see also Great Coastal Express Inc., supra,* (Where the court analyzed the purpose behind the decision to remand the case in determining when to begin the accrual of post-judgment interest.)

Maryland Rule 8–604(d) provides:

**(d) Remand.**

(1) *Generally.* If the Court concludes that the substantial merits of a case will not be determined by affirming, reversing or modifying the judgment, or that justice will be served by permitting further proceedings, the Court may remand the case to a lower court. In the order remanding a case, the appellate court shall state the purpose for the remand. The order of remand and the opinion upon which the order is based are conclusive as to the points decided. Upon remand, the lower court shall conduct any further proceedings necessary to determine the action in accordance with the opinion and order of the appellate court.

We remanded the case to the trial court to make additional findings of fact. The rule makes clear that the order of remand and the opinion upon which the order is based are conclusive as to the points decided. In this case, the trial court made no findings of fact on two issues affecting the outcome of the case. Specifically, the trial court was asked to determine whether the investment in WMTO was made in the ordinary and proper conduct of XLG's business. This was a defense raised by appellees in the first trial, which could have affected the outcome of the case had the trial court found the transaction to be in the conduct of XLG's business. The second issue on remand dealt with another defense raised by appellee, *i.e.,* that the investment in WMTO was for the purpose of preserving the partnership property, namely the cellular licenses. Again, the trial court was asked to make a factual finding which could have affected the outcome of the

proceedings. If the trial court had found differently, the outcome would have been in favor of appellees.

In other words, the trial court's initial decision did not settle the dispute conclusively in appellant's favor because the decision was rendered on less than a complete factual analysis. To develop that factual basis, the findings of fact, on remand, were essential. Therefore, by vacating the judgment, it became void and appellee was not liable on the initial judgment entered. *Great Coastal Express Inc., supra,* is factually dissimilar. In that case, the remand did not affect the validity of the verdict in favor of the plaintiff, only the amount of that judgment. Here, as we have explained, the facts found on remand could have changed the outcome of the litigation in appellees' favor.

Following remand, the court again entered judgment in favor of appellant, which was entered on the docket on November 13, 2003. Appellees appealed the court's decision to this Court and we affirmed, only modifying the judgment for an error in computation. The judgment of the trial court was not disturbed by us on appeal; thus, appellees' liability on the judgment attached on that date. The trial court did not err in awarding post-judgment interest from November 13, 2003.

Consideration of the purpose of post-judgment interest does not require a different outcome. The successful party is not entitled to compel the immediate payment of compensation unless and until there is a judgment in his, her or its favor. The original judgment, as we have explained, did not conclusively settle the litigation. The questions left unanswered by the trial court had the possibility of reversing the outcome in favor of appellee. Until those questions were resolved, it could not be concluded that appellant was entitled to a judgment against appellee. Those questions were answered by the trial court on November 13, 2003, and it was at that point that appellant became entitled to compel immediate payment from appellee.

Appellant has also suggested that this case is similar to *Brown, supra.* She contends, "Just as the reversal of the

entry of a j.n.o.v. in *Brown* is the equivalent of an affirmance of the original judgment, so is an affirmance of a trial court's decision after a remand for further fact finding." We disagree. The reversal of the j.n.o.v. in that case required that the trial court reinstate the original judgment, as if that judgment had never been disturbed. Here, the trial court was asked to find additional facts, which could have required a different outcome. The fact that those findings favored appellant does not equate to an affirmance of the original judgment. The judgment rendered by the trial court, following remand, was based on the additional information set forth in the additional fact finding and cannot be viewed as a simple reinstatement of the original judgment.

We hold that appellee was not liable for post-judgment interest until the judgment was rendered and entered on the docket on November 13, 2003 in appellant's favor. Consequently, the circuit court did not err in granting post judgment interest from that date.

**JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**