981 A.2d 727

ACCUBID EXCAVATION, INC.

v.

KENNEDY CONTRACTORS, INC.

No. 992, Sept. Term, 2008.

Court of Special Appeals of Maryland.

Oct. 5, 2009.

Howard S. Stevens (Jason R. Potter, Wright, Constable & Skeen, LLP, on brief), Baltimore, for Appellant.

Scott D. Miller (Weinberg & Miller, LLC, on brief), Frederick, for Appellee.

Panel: DAVIS, HOLLANDER and WRIGHT, JJ.

DAVIS, J.

Appellant, AccuBid Excavation, Inc., appeals from a judgment by the Circuit Court for Frederick County, awarding appellee, Kennedy Contractors, Inc., $41,296.16 in attorney's fees, in addition to attorney's fees previously awarded. The genesis of these proceedings was a mechanic's lien action filed by appellant, a subcontractor to appellee, in the Circuit Court for Frederick County, in conjunction with a construction project. Trial proceeded in the circuit court on appellee's breach of contract counter-claim based on the alleged failure of appellant to perform in accordance with its construction subcontract.

In 2000, at the conclusion of the trial, the court entered judgment against appellant in the amount of $78,222.20, including an award of $48,222 for appellee's attorney's fees,

provided for under the subcontract between the parties governing attorney's fees. In an appeal to this Court filed by appellant from the trial court's decision, in an unreported opinion,[1] we disallowed "interest carry charges," thereby partially vacating and, in effect, reducing the money judgment entered against appellant.

On remand, pursuant to appellee's Petition for Additional Attorney's Fees, filed September 24, 2002, the circuit court entered judgment on June 8, 2004, awarding appellee $14,700 in additional attorney's fees. Appellant appealed the court's award of these additional attorney's fees to this Court and we vacated the award of additional fees in its entirety and remanded the case to the trial court with direction for the circuit court to revise its judgment in accordance with our unreported opinion.[2]

On March 30, 2006, the trial court entered a revised judgment, pursuant to our mandate, which was recorded on April 3, 2006. On April 10, 2006, the clerk issued the Notice of Modification of Judgment, the judgment becoming enrolled as a final judgment on May 3, 2006. On May 16, 2006, appellant filed a Plea of Tender requesting that appellee be required to accept post-judgment interest running from the June 8, 2004. Appellee filed its opposition thereto on May 31, 2006 and requested post-judgment interest dating back to the court's first entry of judgment in June 2000, as opposed to the intermediate June 8, 2004 judgment or the March 30, 2006 final judgment. Appellee's opposition to the Plea of Tender also requested additional attorney's fees pursuant to the provision for attorney's fees in the contract between the parties.

After a hearing on appellee's request for interest, the circuit court ruled that post-judgment interest would accrue as of June 27, 2000, the date of the first judgment. Appellant, for

---

**1.** *See Accubid Excavation, Inc. v. Lionheart Limited Partnership*, No. 1123, September Term, 2000 (filed July 5, 2002) (*AccuBid I*).

**2.** *See AccuBid Excavation Inc. v. Kennedy Contractors, Inc.*, et al., No. 688, September Term, 2004 (filed November 16, 2005) (*AccuBid II*).

the third time, appealed to this Court; we dismissed the appeal as premature. On remand, appellant filed a Motion to Dismiss, Alternatively, Motion for Summary Judgment with respect to appellee's request for additional attorney's fees on December 22, 2006. Subsequent to appellee's opposition to the Motion, the circuit court, on May 6, 2008, conducted a hearing and denied appellant's Motion. On June 3, 2008, the court held an evidentiary hearing to consider the amount, if any, of attorney's fees to be awarded to appellee. Appellee's counsel cited the subcontract between the parties as the basis of his request for attorney's fees. At the conclusion of the hearing, the court "clarified" that the award was "for attorney's fees incurred basically after April 3, 2006," which was the date the clerk recorded the final judgment. In response to further requests for clarification from appellant's counsel, the court stated that its attorney's fee award was not a revision to the April 3rd final judgment:

> I don't think it can be. . . . Because what the Court of Special Appeals did was said that [sic] that [Judge Dwyer's August 16,2006 oral order awarding post-judgment interest and reserving on attorney's fees] is a non final order because I reserved on attorney's fees. That order did not touch that [April 3, 2006 final] judgment I don't think.

The court opined, "I don't think I have any authority to award attorney [sic] fees in this, other than pursuant to the subcontract, how's that?" The court added that, "if that subcontract [between the parties] did not, um, survive that April 3rd order then Mr. Miller's [attorney's fee request is] in trouble."

As noted, in a written order filed June 12, 2008, the trial judge awarded appellee $41,296.16 in additional attorney's fees, in addition to the award of $48,222 that was included in the final judgment against appellant. This appeal followed.

Appellant filed this timely appeal, presenting the following questions, which we rephrase slightly, for our review:

> I. Did the trial court err when it awarded additional contract-based attorney's fee damages requested after the

entry of a non-appealable and enrolled final judgment on the contract in question?

II. Did the trial court err in granting post judgment interest to accrue from the date of the first judgment entered in this case, even though that judgment amount has since been subject to multiple reductions due to appeals taken to this Court?

For the reasons that follow, we answer appellant's first question in the affirmative and the second question in the negative and accordingly affirm, in part, and vacate, in part, the judgments of the Circuit Court for Frederick County.

## FACTUAL BACKGROUND[3]

On November 15, 1996, appellee entered into a contract with the owner and developer of the New Market Food Lion Shopping Center, Lionheart, to construct a grocery store for its principal tenant, Food Lion, at that location. According to that contract, appellee was to serve as general contractor for the Project. The contract provided that time was "of the essence," and that appellee had to "achieve Substantial Completion" of its work "not later than 210 days from the date of commencement." The contract defined the "date of commencement" as "ten days after the issuance of all required building permits or a Notice to Proceed from the Owner, whichever occurs last."

Three and a half months later, on February 26, 1997, appellee entered into a "lump sum" subcontract with appellant, in which the latter agreed, *inter alia*, to widen Route 144 and complete on-site paving and water and sewer utility work. Appellant also agreed to furnish all labor materials, tools, fees, taxes, insurance, permits, licenses and all miscellaneous costs to achieve Site Work requirements in accordance with plans and specifications prepared by Lionheart's engineering consulting firm, Loiderman Associates. Inc. (Loiderman). Appel-

---

**3.** The underlying facts are excerpted, in part, from our unreported opinion in *AccuBid I.*

lant then entered into a contract with Frederick County for on and off-site utility installation on the Food Lion Project.

Appellant obtained the subcontract with appellee through a competitive bidding process, which required appellee to provide potential bidders with documents (bid documents), prepared by Loiderman. Based on the bid documents, appellant submitted a bid, which was accepted by appellee and the parties then entered into the subcontract, in which appellant stated that it had "visited the site and [was] familiar with the existing conditions." It also represented that it had "reviewed the plans and specifications and that said plans and specifications [were] complete *and/or* sufficient to provide a complete operating system." It further stated that, "with exception of design changes," it could "complete the project with no additional cost to Contractor." And it agreed that it would not "be entitled to any extras or change orders resulting from 'insufficient information' to complete its portion of the work."

On October 16, 1997, eight months after appellant began work on the Project on March 13, 1997, according to appellant, the location of the "edge of existing paving" was exposed when "excavation for the subgrade of the road widening was initiated." It was at this time, appellant claims, that the true "subsurface condition" of the road was revealed and it was discovered that those conditions were different from what was depicted in the bid documents provided by appellee.

The next day, a Frederick County inspector noted in his "Daily Log" that the "[e]xisting shoulder [of Route 144] has approx [sic] 2 to 5 . [inches] of tar & chip surface." The inspector, having observed that "[t]here appears to be a discrepancy in the plans as to what surface is to be removed," wrote that "Frederick County will not accept tar & chip shoulder as main line travel area." Appellant, accordingly, requested a "change order" from appellee for additional compensation for what it claimed was an increase in the amount of paving necessary to complete the project over what was set forth in the bid documents. In a letter dated October 28, 1997, Keith Flannagan, appellee's project manager, denied the

request, stating that, after consulting with its engineer, appellee believed that "the plans adequately cover[ed][the] area and that no additional cost [was] justified." Flannagan further wrote: "It is my understanding that your firm has left this site until this question has been answered. Please continue on this work as per our contract to avoid impacting our schedule." The letter concluded that it was to be considered as "notification to [appellant] to continue this work as required by our contract."

Rather than resume working, appellant wrote a letter to appellee, dated November 7, 1997, advising appellee that it was "willing to perform any additional work as long as we are provided drawings which illustrate what is to be done" and that it "never agreed to do additional work outside of the scope outlined in the contract documents and drawings to satisfy County Requirements." The letter continued, "Until [it was] provided with a red line revision to the plan," it would "proceed with the" plans as drawn, which, as indicated in the Frederick County inspector's report, would not meet Frederick County standards. Additionally, delays, the result of rainy weather which required appellee to apply "soil cement" to the ground to facilitate paving in wet conditions, were a further source of conflict between appellee and appellant.

Apparently responding to a letter appellee had received from appellant on November 17, 1997, appellee, on the same day, sent a letter stating that, because appellant had implied in its letter that it was "not going to install the right of way work on the" Project "in accordance with the directives issued . . . by Frederick County" and had "refused to mobilize on the right of way work after being given the required notice to do so," it was terminating its subcontract with appellant.

Thereafter, appellee entered into a subcontract with a different excavating company, which in turn, subcontracted the work to a third excavating company. All of the excavation work for the Food Lion Project, including the widening of Route 144, was approved by a Frederick County inspector on February 5, 1998.

On January 2, 1998, appellant filed a complaint for breach of contract and a petition to establish and enforce a mechanic's lien in the Circuit Court for Frederick County. In its complaint and petition to establish mechanic's lien, appellant contended that appellee wrongfully terminated it, and that appellee's "refusal to render payment to appellant" constituted a "breach of the agreement between the parties." As a result, appellant claimed that it was entitled to "damages for wrongful termination, lost profits and consequential damages."

In response, on April 8, 1998, appellee filed a counter-claim against appellant for breach of contract and negligence. In its counter-claim, appellee maintained, among other things, that pursuant to its subcontract with appellant, "appellant was to undertake any and all work to supply any all [sic] materials necessary to widen and overlay a portion of Maryland Route 144." Appellee further asserted that, after it requested that appellant "perform the widening and overlay work as required by the Contract," appellant "repudiated the contract" and refused "to proceed with the road widening ... thereby anticipatorily breaching its contract with appellee." As a result, appellee claimed $160,000 in damages plus, pursuant to the terms of its contract with appellee, "reasonable attorneys [sic] fees."

Following a bench trial, in rendering its findings, the circuit court stated that it did "not find the contract has any hidden conditions, any ambiguous terms, anything that would justify a change order as was requested by [appellant] in this case." The court also stated that it was "convinced" that appellant was responsible for any delays in completing the Food Lion Store, that appellant had refused to proceed with the subcontract and that, consequently, appellant had anticipatorily breached its subcontract with appellant. Having found appellant in breach of the subcontract, the court granted judgment against appellant in the amount of $30,000. The court also found that the parties had previously stipulated to the fairness and reasonableness of attorney fees and, accordingly, awarded appellee $48,222 in attorney's fees, resulting in a total judg-

ment in favor of appellee and against appellant in the amount of $78,222.

Appellant filed an appeal to this court and we affirmed in part, but reversed the court's award of "interest carry" damages and remanded the case, directing that damages be adjusted in a manner consistent with our opinion. Upon remand, on June 8, 2004, the court awarded appellee $14,700 in additional attorney's fees. The June 8, 2004 award was appealed and, in an unreported opinion dated November 16, 2005, we vacated the award, reversing that portion of the order dated June 4, 2004, which had awarded attorney's fees in the amount of $14,700 and remanded for revision of the judgment in accordance with our opinion.

On November 30, 2005, Thomas Pank, President of appellant, forwarded a check in the amount of $53,746.86 to counsel for appellee. The letter accompanying the check stated: "Below is full payment for the judgment based on the Opinion recently received by me from the Maryland Court of Special Appeals." Appellant's check in the amount of $53,746.86 did not include post-judgment interest that appellee asserted that it was owed. Appellant's explanation for remitting its check in the amount of $53,746.86 was that, by doing so prior to the December 15, 2005 Mandate, the tender of its check prevented post-judgment interest from accruing. Appellee refused to accept the $53,746.86 check as payment in full and thereafter made written and verbal requests that appellant withdraw its conditional tender and provide confirmation that the $53,746.86 check was not tendered as "payment in full." When appellant failed to comply with appellee's request, the latter advised appellant that it would not accept appellant's tender of payment because, in its view, post-judgment interest automatically applies to all judgments regardless of whether post-judgment interest is specifically mentioned in the judgment and, under Maryland law, the post-judgment interest, *sub judice*, began to accrue on June 27, 2000.

On March 30, 2006, the trial court entered a final judgment in favor of appellee and against appellant in the amount of

$53,746.86, in accordance with the mandate issued by this Court. That judgment included an award of attorney's fees in the amount of $48,222, which were presented in appellee's case-in-chief and awarded in the first judgment in June 2000. The March 30, 2006 judgment was entered on the court docket by the clerk on April 3, 2006. No amended complaint or post-judgment motions were filed by appellee pursuant to Maryland Rules 2–534 and 2–535 (Motion to Alter or Amend Judgment; The Trial Court's Revisory Power). On March 30, 2006, the trial judge, in accordance with our Mandate, entered a revised judgment in the amount of $53,746.86.

On May 16, 2006, appellant filed a Plea of Tender requesting that appellee be required to accept the sum of $53,746.36 plus accrued interest of $8,010.42, which amount represented interest at the rate of ten percent per annum from June 4, 2004 until the date of appellant's tender of payment dated November 30, 2005. In response, appellee filed its Response to Plea of Tender and Motion for Award of Post–Judgment interest to collect the full amount of the judgment plus post-judgment interest from the original date of judgment. Additionally, in its Response to Plea of Tender and Motion for Award of Post–Judgment Interest, appellee sought attorney's fees in connection with appellee's attempts to collect the total amount due on the judgment.

Accordingly, the judgment became final and enrolled thirty days thereafter, on May 3, 2006. On May 31, 2006, appellee filed its Response to Plea of Tender and Motion for Award of Post–Judgment Interest, in which it opposed appellant's Plea of Tender, sought post-judgment interest dating back to the original June 2000 judgment and requested additional post-judgment attorney's fees. On December 22, 2006, appellee filed a Motion to Dismiss, Alternatively, for Summary Judgment with respect to its request for attorney fees, arguing that, contractually-based attorney's fees form part of the prevailing party's damages claim, which then merge into a final judgment, unlike attorney's fees awarded pursuant to statute, which are collateral in nature. After appellee opposed appellant's Motion, the parties, on May 6, 2008, appeared

before the trial judge, who heard oral arguments and denied appellant's Motion. The court's verbal order was subsequently reduced to writing and filed on May 19, 2008.

On August 16, 2006, during a motions hearing on appellant's Plea of Tender and appellee's Response to Plea of Tender and Motion for Post–Judgment Interest, the trial judge, agreeing with appellee's position as to the accrual date for post-judgment interest, denied appellant's Plea of Tender and granted appellee's Motion for Post Judgment Interest, but reserved on the issue of appellee's request for additional attorney's fees incurred in connection with appellee's attempts to collect the full amount of the judgment plus post-judgment interest. On September 14, 2006, the court entered an Order reflecting the trial judge's ruling that appellant pay appellee the principal amount of $53,746.36 plus post-judgment interest at the rate of ten percent per annum from June 27, 2000, the original date of judgment.

Appellant appealed the post-judgment interest award to this Court; we dismissed the appeal as premature in an unreported opinion issued June 14, 2007, in light of the fact that the court had not ruled on appellee's request for attorney's fees. *AccuBid Excavation Inc. v. Kennedy Contractors, Inc.*, No. 1573, September Term, 2006 (filed June 14, 2007) (*AccuBid III*). On June 3, 2008, the circuit court elicited testimony and heard oral argument on appellee's request for attorney's fees. At the hearing, appellee's counsel identified the parties' subcontract as the legal basis in support of its request for attorney's fees. The following transpired at the hearing:

> THE COURT: First as to the contract entered today as Defendant's Exhibit 6, there was no need for a witness on the stand, and actually Article 14, we're not going to take, we wouldn't take parole evidence on it or anything of that nature. It says what it says, and I read it to say that the contractor in this case, uh, [appellee] is entitled to reasonable attorneys [sic] fees as may be expended with respect to basically enforcing and collecting the judgment or anything for any breech [sic] of the contract and, therefore, I don't find any need for any person on the stand.

I do find that based upon both Mr. Clapp and Ms. McBride's testimony that the bills introduced are fair, reasonable and necessary for the prosecution of this case, particularly the, uh, part about post judgment interests, and that the fees incurred and the hourly rates expended by Mr. Miller and Ms. Peeples are fair and reasonable even when they increased.

The amount I find is proven for purposes of this is the 42,667.98 as found on Defendant's Exhibit Number 3, however, from that as conceded by the moving party here, uh, [appellee], you have to deduct the 127.82 and also from Defense Exhibit Number 1, the January 6 building [sic], billing, which I have of 916.50, the February billing, which I have as 133.50, the March 6 billing, which I have as 87.50, and the April 6 billing, which I have as 306.50 noting that there's a separate thing for a triple seal of order and that's completely different, and I'm not even sure where that goes.

I have, therefore, if my math is correct, correct added those four numbers together, came up with attorneys [sic] fees of 1444 during that period, which I find are not appropriate to be awarded in this case. Not that the work wasn't done, not that it was not fair and reasonable, but I have trouble with that concept that those were fees incurred between the mandate and this Court, um, following the mandate entering the revised judgment.

Therefore today and, Mr. Miller, you're going to have to prepare the judgment on this or the order on this, because I don't really have it, I come up with a judgment for attorneys [sic] fees in favor of [appellee] and against [appellant] in the amount of the 41,296.16.

And, Mr. Miller, how long will it take you to have an order on that?

MR. MILLER: Your Honor, I'll certainly with a courtesy, run that order by, uh, Counsel here, but certainly today or tomorrow.

THE COURT: Okay, and if not you'll be both back here Friday at 2:00, which is just a status conference and I have

it, I know you're going to want to appeal, and that's fine, I just say please don't appeal until it's final. Yes, sir, Mr. Stevens?

MR. STEVENS: For clarity, Your Honor, um, are you directing Mr. Miller to prepare a new judgment or are you revising the judgment for attorney's fees that's already in this case?

THE COURT: I don't think there is any judgment for attorney's fees in this case.

MR. STEVENS: The, the underlying judgment in this case includes an award of 48,222.50?

THE COURT: And you have the—

MR. MILLER: That's close enough.

MR. STEVENS: For, for attorneys [sic] fees.

THE COURT: I'm confused, because I thought that underlying judgment in this case is only the 53,000, and that's—

MR. MILLER: It is, which—

MR. STEVENS: There's 48,000 of that—

THE COURT: Is there 48,000 of that?

MR. STEVENS:—for fees.

THE COURT: I didn't even—48.

MR. MILLER: Yes, I—Your Honor, it's, it's—

THE COURT: I think that judgment should clarify. The, the order from Mr. Miller should be clear that the, this award, let me put it this way, that judgment, all I did on that judgment was take the opinion to the Court of Special Appeals, subtract what they told me to subtract out, and enter an order. I did not go back to figure out how they came up with—

MR. STEVENS: Right.

THE COURT:—the 53,000, and I'm not going to—so I think that this order should clarify that this is for attorneys [sic] fees incurred basically after April 3rd, 2006.

MR. STEVENS: Under the subcontract?

THE COURT: Pursuant to the subcontract. Pursuant to what's been entered today as Defense Exhibit Number 6 entered today. I don't know the, I say it that way because I know it's in here before, but I don't under, know under what number it is.

MR. STEVENS: Um-hum. So the Court's not revising the judgment that already includes interest, I mean attorneys [sic] fees?

THE COURT: I don't think, that judgment, that judgment I entered on April 3rd was for $53,000 some dollars plus post judgment interests and costs.

At the conclusion of the hearing, the trial judge awarded appellee $41,296.16 in attorney's fees for legal services rendered from December 2005 through the date of the hearing. The court's oral ruling was reduced to a written order dated June 4, 2008 and recorded on June 12, 2008. The court's ruling had previously been reserved by Order signed September 12, 2006 and docketed September 14, 2006, in the amount of $41,296.16. Appellant's Notice of Appeal was filed on June 27, 2008. The attorney's fees sought by appellee and awarded by the trial court were only those attorney's fees incurred from December, 2005 through June, 2008. Thus, the court awarded appellee $41,296.16 in additional attorney's fees, in a separate judgment. On June 27, 2008, appellant timely appealed the circuit court's award of attorney's fees.

## ANALYSIS

### I

■ Appellant initially contends that this Court's March 30, 2006 Order constituted a final judgment, adjudicating all controversies between the parties arising out of the subcontract. Because appellee failed to appeal or otherwise challenge this final judgment, maintains appellant, the March 30, 2006 Order "clearly and unequivocally" established the amount of the final judgment, "which included $48,222 for attorney's fees." Summarizing its version of the procedural background, appellant relates in its brief to this Court:

There is no dispute that Judge Stepler's original June 2000 judgment awarded [appellee] damages under the subcontract for attorney's fees in the amount of $48,222. Judge Dwyer later awarded, more expressly under the same subcontract, another $41,296.16. The later award is barred by this Court's March 30, 2006 Order of final judgment, which resolved all claims arising from the Subcontract, including attorney's fees. [Appellee's] subcontract damages merged into the Judgment. This Court, on any remand, did not provide for additional attorney's fees within its mandate governing any remand and no party sought to modify or amend this Court's March 30, 2006 Order of final judgment. Therefore, all claims arising out of the Subcontract were merged into the March 30,2006 Order of final judgment.

Appellee, for its part, counters that appellant's failure to satisfy its obligations under the original judgment is the *sole* reason it continued to incur attorney's fees subsequent to the date of the original judgment. It was appellant that prolonged the final resolution of this case, insists appellee, by failing and refusing to pay the full amount of the judgment plus post-judgment interest at the legal rate from the date of the original judgment. Because appellant attempted to pay appellee less than what appellee was rightfully owed, appellee continues, it was forced to incur additional attorney's fees in its attempt to collect the full amount owed by appellant. In addition to appellant's refusal to pay post-judgment interest, according to appellee, these attorney's fees were incurred as a result of appellant's subsequent premature appeal of the circuit court's ruling on post-judgment interest.

In summarizing its position, appellee asserts that the award of attorney's fees is proper because it was forced by appellant to incur those fees when appellant refused to pay the full amount of the judgment owed. Because the attorney's fees incurred by it in conjunction with the collection of its judgment in no way relate to its damage claim on the merits and were not incurred as a part of prosecuting the merits of the underlying breach of contract action between appellee and appellant, posits appellee, the doctrine of merger does not

apply. But for appellant's challenge to appellee's claim for the post-judgment interest, which it believes it was rightfully owed from the date of the original judgment dated June 27, 2000, appellee never would have incurred the additional attorney's fees to enforce the terms of the subcontract.

Finally, citing the "express terms" of the subcontract between the parties, appellee maintains that the subject fees clearly fall within the definition of attorney's fees "as may be expended." The pertinent language of Article XIV of the subcontract provides:

> In the event of default by the Subcontractor under any of the terms and provisions hereof and should the Contractor employ an attorney *to enforce any provision hereof* or *to collect damages for breach of this Subcontract* or to recover on the bond referenced above, the Subcontractor and his surety shall pay to the Contractor such reasonable attorney's fees as may be expended with respect thereto."

(Emphasis added).

Like most jurisdictions in the United States, Maryland follows the "American rule" on attorney's fees, according to which a party in a compensatory damages action may recover attorney's fees only if (1) permitted by statute or (2) provided for in a contract between the parties. *Hess Constr. Co. v. Bd. of Education of Prince George's County*, 341 Md. 155, 160, 669 A.2d 1352 (1996); *Long v. Burson*, 182 Md.App. 1, 25–26, 957 A.2d 173 (2008); *Chang v. Brethren Mut. Ins. Co.*, 168 Md.App. 534, 551–52, 897 A.2d 854 (2006). If an exception to the rule does not apply, then "each party to a case is responsible for the fees of its own attorneys, regardless of the outcome." *Friolo v. Frankel*, 403 Md. 443, 456, 942 A.2d 1242 (2008). Appellee's claim for attorney's fees is based solely on the contractual provision excerpted *supra*. Appellee makes no claim that its request for attorney's fees is authorized by statute or other exception to the rule.

As appellant points out, we have previously held in cases involving the recovery of *statutorily-permitted* or *rules-based* attorney's fees that the recovery of attorney's fees presents a

matter collateral to or independent from the merits of the action. *See, e.g., Mullaney v. Aude,* 126 Md.App. 639, 649–53, 730 A.2d 759 (1999); *Dent v. Simmons,* 61 Md.App. 122, 129–30, 485 A.2d 270 (1985); *Maryland Nat'l Capital Park & Planning Comm'n v. Crawford,* 59 Md.App. 276, 303, 475 A.2d 494 (1984). On the other hand, attorney's fees recoverable pursuant to a *contract* are " 'part of the damage's claim.' " *G–C P'ship v. Schaefer,* 358 Md. 485, 488, 749 A.2d 823 (2000) (quoting *Mattvidi Assocs. Ltd. P'ship v. NationsBank of Virginia,* 100 Md.App. 71, 78 n. 1, 639 A.2d 228 (1994)). In *G–C P'ship,* a case involving issues of appealability, the Court of Appeals dismissed an appeal from a trial court's judgments as to contract damages filed *before* the court ruled on a claim for contractually-based attorney's fees, *id.* at 487–89, 749 A.2d 823, where the merits of the case involved a breach of a guaranty agreement and the request for fees was based on a provision for attorney's fees in that agreement obligating the guarantors to pay for " 'all legal and other expenses paid or incurred in enforcing the Guaranty.' " *Id.* at 486, 749 A.2d 823. In so holding, the Court of Appeals reversed our decision in that case, where we (1) cited to *Mattvidi Assocs. Ltd. P'ship, supra,* for the proposition that " 'attorney's fees pursuant to a contractual provision are part of [the prevailing party's] damage claim,' " but (2) nonetheless concluded that such fees could be awarded because the court could exercise discretion under Maryland Rule 8–602(e)(1)(C) to enter a final judgment on its own initiative. *G–C P'ship,* 385 Md. at 487–88, 869 A.2d 837. This holding, stated the Court of Appeals, was erroneous:

> Rule 8–602(e)(1)(C) is not applicable to the circumstances of the instant matter. The circuit court did not have discretion to direct the entry of a final judgment pursuant to Rule 2–602(b) based on the summary judgment rulings made on June 19, 1998. This is because *the counsel fees that were awardable pursuant to the contract form part of the claim for breach of contract,* but they had not been determined when the 1998 appeal was noted. Rule 2–602(b) may not be used to certify as final only part of a claim.

*Id.* at 488, 869 A.2d 837 (citations omitted and emphasis added).

Appellant asserts that, because appellee's attorney's fees claim was contract-based, the doctrine of merger prevented appellee from seeking additional contract-based attorney's fees once final judgment was entered on appellee's breach of contract claim, which, according to appellant, occurred when the circuit court's March 30, 2006 order, following three successive appeals to this Court, was entered on April 3, 2006. This, according to appellant, distinguishes the case *sub judice* from those involving claims for attorney's fees authorized by statute, which are generally considered "collateral" to the merits of the action. We agree with appellant's argument. We explain.

The rule of merger is defined by the Restatement (Second) of Judgments § 18 (1982) as follows:

When a valid and final personal judgment is rendered in favor of the plaintiff:

(1) The plaintiff cannot thereafter maintain an action on the original claim or any part thereof, although he [or she] may be able to maintain an action upon the judgment; and

(2) In an action upon the judgment, the defendant cannot avail himself [or herself] of defenses he [or she] might have interposed, or did interpose, in the first action.

Although we are unaware of any Maryland case addressing the specific factual and procedural scenario presented here, *i.e.,* an entry of judgment on the merits of a breach of contract claim followed by a post-judgment request for attorney's fees based on provisions of the same contract,[4] Maryland's appel-

---

4. The Court of Appeals has addressed instances where the remedial nature of a statute permits a trial court to award post-judgment attorney's fees. *See, e.g., Pak v. Hoang,* 378 Md. 315, 322, 835 A.2d 1185 (2003) ("We hold that the remedial nature of the Maryland Security Deposit Act permits a trial court to award post-judgment attorney's fees under the Act in order to ensure full vindication of tenants' rights to recover security deposits owed to them as contemplated by the statute."). No such remedial statute is implicated here.

late courts have recognized that, under the rule of merger, "a simple contract is merged in a judgment or decree rendered upon it, and that all its powers to sustain rights and enforce liabilities terminated in the judgment or decree...." *Jackson v. Wilson,* 76 Md. 567, 571, 25 A. 980 (1893) (citation omitted).[5] *See also United Book Press v. Md. Composition Co.,* 141 Md.App. 460, 474, 786 A.2d 1 (2001) (citing Restatement (Second) of Judgments § 18, cmt. a (1982) for the proposition that "a claim merges into a judgment obtained with respect to that claim" and holding that, while a cause of action on a contract between the appellant and a third party merged into the judgment against the third party, a separate cause of action between the appellant and another party, based on a separate contract, did not merge into the judgment).

Moreover, other jurisdictions have determined that, once a contract has been merged into the judgment, post-merger attempts to collect attorney's fees authorized only by the merged contract cannot be sustained. In *Production Credit Assoc. of Madison v. Laufenberg,* 143 Wis.2d 200, 420 N.W.2d 778, 779 (1988), a creditor claimed that it was entitled to post-judgment attorney's fees based on the provisions of its loan agreement with the debtors, which provided, in pertinent part, that the creditor was authorized to pay for certain expenses from the debtors' account, including the following:

> Except where and to the extent prohibited by applicable law, promptly pay or reimburse [the creditor] for all ex-

---

**5.** The *Jackson* Court added that "... it is also recognized as one of the limitations of this doctrine of merger, that the original contract is not in all cases to be entirely ignored subsequent to the rendition of a judgment or decree." 76 Md. at 571, 25 A. 980 (citation omitted). *Jackson* dealt specifically with the authority of the trial court to look to the contract or note, notwithstanding its merger into the judgment, to determine the amounts owed on a contract or note, when a creditor sought review of the trial court's order distributing the proceeds of a sale of property. *Id.* at 570–71, 573–74, 25 A. 980. The matter we discuss here is distinguishable, as it involves a contract-based claim for attorney's fees, which, as we shall explain, merges with the contract into the judgment. Thus, having cited to the general principle announced therein to merger, we need not discuss the remainder of the *Jackson* decision.

penses, fees, and disbursements, including reasonable attorneys' fees, incurred either before or after any default in connection with: this Agreement and the documents related to it, the perfection of [the creditor's] security interest or other lien in collateral, or incurred in connection with protecting or enforcing its rights with respect to collateral or foreclosing against the same as more fully detailed in any security agreements, mortgages, or other collateral documents given in accordance with Section 5.0 of this Agreement.

*Id.* at 779. The Wisconsin Court of Appeals observed that attorney's fees are only recoverable if "such liability arises from a specific statute or the contract of the parties," and, that, under the doctrine of merger, "upon entry of judgment, the contract sued upon loses all of its vitality and ceases to bind the parties to its execution." *Id.* (citations omitted). The Court cited to Restatement (Second) Judgments § 18 and concluded that the creditor could not recover attorney's fees incurred after the entry of judgment on the loan agreement because, at that point, the creditor no longer had a contractual right to those fees. *Id.* at 780.

Similarly, in *Caine & Weiner v. Barker*, 42 Wash.App. 835, 713 P.2d 1133, 1134 (1986), an action involving a suit on a promissory note to recover a money debt, the Washington Court of Appeals explained:

Claim preclusion, or res judicata, has two aspects. The first applies to a judgment for a defendant, barring the plaintiff from bringing another action on the same claim. Restatement (Second) of Judgments § 19 (1982). The second aspect is the rule of merger, which applies generally to a judgment for a plaintiff in an action to recover money. *Carothers v. Carothers*, 260 Or. 99, 488 P.2d 1185 (1971). As a general rule, when a valid final judgment for the payment of money is rendered, the original claim is extinguished, and a new cause of action on the judgment is substituted for it. *Yergensen v. Ford*, 16 Utah 2d 397, 402 P.2d 696, 697 (1965); 6 A. Corbin, *Contracts* § 1318 (1962); 15 S. Williston, *Contracts* § 1874 (3d ed.1972). Thereafter,

the plaintiff cannot maintain an action on the original claim or any part thereof. Restatement (Second) of Judgments § 18.

Thus, the *Caine & Weiner* Court held that the plaintiff, suing to collect on a judgment entered upon a debtor's default on a promissory note, could not seek post-judgment attorney's fees where the defendant's liability as to such fees originated in the note. *Id.* at 1134, 1135. The obligation of the defendant under the note became an obligation on the judgment. *Id.* at 1135–36. *Accord Hatch v. T & L Assocs.*, 319 N.J.Super. 644, 726 A.2d 308, 310 (1999)("We are persuaded that there are sound policy reasons consistent with the philosophy of the American rule for not construing the typical attorney-fees provision as including post-judgment services. We think it plain that a contrary construction would have a substantial potential for abuse, for unduly burdening consumer and other commercial transactions, for indefinitely delaying finality, and for spawning a host of ancillary litigation. Consequently, unless the agreement is express as to the post-judgment obligation, we decline to construe it as imposing that obligation."); *see Chelios v. Kaye*, 219 Cal.App.3d 75, 268 Cal. Rptr. 38, 40 (1990) [6] ("When, as here, a lawsuit on a contractual claim has been reduced to a final, nonappealable judgment, all of the prior contractual rights are merged into and extinguished by the monetary judgment, and thereafter the prevailing party has only those rights as are set forth in the judgment itself. [...] In short, the judgment extinguished all

---

**6.** In response to the *Chelios* decision, the California legislature later provided, by statute, a means by which judgment creditors could recover post-judgment attorney's fees under circumstances specified in the statute. *See Chinese Yellow Pages Co. v. Chinese Overseas Marketing Serv. Corp.*, 88 Cal.Rptr.3d 250, 261, 169 Cal.App.4th 1025 (2008). We are aware of no such statutory authorization in Maryland. It remains the case in California that, absent a statutory provision stating otherwise, post-judgment attorney's fees cannot be recovered where the basis for those fees is a contractual provision that has merged into the judgment. *See Jaffe v. Pacelli*, 165 Cal.App.4th 927, 82 Cal.Rptr.3d 423, 428–29 (2008).

further contractual rights of the Chelioses, including the contractual attorneys [sic] fees clause.") (citations omitted).

Here, the March 30, 2006 order of the trial court, which was entered on April 3, 2006, ordered *total judgment* in the amount of $53,746.36—an amount that reflected appellee's request for attorney's fees up through April 3, 2006. Appellee's request for additional, contract-based attorney's fees subsequent to this order was made only when it opposed appellant's Plea of Tender. Appellee did not request that the trial court revise its March 30, 2006 order; nor did appellee appeal that order. Appellee, rather, wishes us to resurrect its contractual right to attorney's fees, notwithstanding the entry of judgment on the merits of its breach of contract claim. We, however, decline to do so. We explain further.

Appellee asserts that the fees about which appellant complains are solely attributable to appellant's "failure to satisfy its obligations under the original judgment" and were "only incurred by [appellee] as a result of [appellant's] refusal to pay post-judgment interest and as a result of [appellant's] subsequent premature appeal of the [trial court's] ruling on post-judgment interest." Appellee, thus, concedes that the award of attorney's fees that is the subject of the instant appeal was, in essence, to cover what appellee deemed to be *post-judgment* fees. Nonetheless, appellee argues that the provision for attorney's fees in its subcontract is plain and unambiguous and "does not limit the recovery of attorney's fees only to those attorney's fees incurred at trial." Rather, according to appellee, the provision contemplates appellant's liability for attorney's fees related to appellee's collection of post-judgment interest. Appellee stresses that this particular fact distinguishes this case from the merger scenarios addressed in *G.C. P'ship* and *Mattvidi, supra.* According to appellee, "the attorney's fees incurred by [appellee] from December 2005 through June 2008 did not pertain to the merits of the underlying case between [appellee] and [appellant] but instead were collateral to that litigation."

To be sure, some of the cases to which we have cited recognize that, where expressly provided for in the agreement, the rights of a party to attorney's fees pursuant to a contract incurred in a claim originating from a breach of that contract may extend beyond judgment, despite merger of the contract. *See Caine & Weiner*, 713 P.2d at 1135 ("[W]here the original obligation provides for special rights or exemptions, in some circumstances these may be preserved and recognized despite merger.") (citing *Nelson v. Nelson*, 91 Ariz. 215, 370 P.2d 952 (1962)); *see also Production Credit Assn. of Madison v. Laufenberg*, 420 N.W.2d at 779 ("In the absence of an express agreement otherwise, the obligation of a debtor to pay the creditor's costs and fees of collection or foreclosure is merged in a judgment in favor of the creditor."). In construing the language of a contract, however, we rely on the objective law of contracts. Accordingly, we look, in the first instance, to the language of the contract which, if plain and unambiguous, leaves no room for construction. *See General Motors Acceptance Corp. v. Daniels*, 303 Md. 254, 261, 492 A.2d 1306 (1985). The plain language of the contract provision at issue held appellant liable should there be default *under any terms of the contract*, requiring appellee to hire an attorney to (1) enforce any provision *of the contract* or (2) collect damages for breach *of the contract*. The instrument giving life to appellee's ability to request attorney's fees, as an exception to the American rule establishing that parties normally incur the costs of litigation, was, by its express terms, the *contract*, which merged into the judgment. *See Hatch*, 726 A.2d at 309 ("Thus, while we recognize that parties may include fee-shifting provisions in their agreements, a corollary of our commitment to the so-called American rule of litigants paying their own fees is that such agreements will be strictly construed.") (citation omitted).

The views of our sister jurisdictions in this regard are persuasive. On the other hand, the United Supreme Court case to which appellee cites, *Budinich v. Becton Dickinson and Co.*, 486 U.S. 196, 199, 108 S.Ct. 1717, 100 L.Ed.2d 178 (1988), is inapposite, for it dealt only with the narrow issue of

"whether a decision on the merits [a case of a compensation claim of an employee removed to a federal district court based on diversity of citizenship] is a 'final decision' as a matter of federal law under [28 U.S.C] § 1291 when the recoverability or amount of attorney's fees for the litigation remains to be determined." *Budinich* did not involve a request for attorney's fees based on contractual provisions between the parties under the circumstances here present. *Cf. Carolina Power & Light Co. v. Dynegy Marketing & Trade,* 415 F.3d 354 (4th Cir.2005) (holding, in a case involving the Federal Rules of Civil Procedure, that, notwithstanding *Budinich,* a party's claim for legal costs "based on a contractual provision that is not limited to expenses incurred during the underlying litigation is an element of damages to be proved at trial," such that a judgment leaving open a claim for such fees is not final under 28 U.S.C. § 1291).

We shall not further address the federal cases cited by appellant on the issue of the finality of a judgment, for purposes of the Federal Rules of Civil Procedure, where there are outstanding claims for attorney's fees based on a contract between the parties; they are legally and factually inapposite. *See Gleason v. Norwest Mortg., Inc.,* 243 F.3d 130, 137–38 (3rd Cir.2001); *Deus v. Allstate Ins. Co.,* 15 F.3d 506, 520–23 (5th Cir.1994). We also find *Moorhead v. Dodd,* 265 S.W.3d 201, 204 (Ky.2008), to be unpersuasive. There, the Supreme Court of Kentucky construed the language of a contractual provision for attorney's fees as substantively entitling a litigant to post-judgment attorney's fees. Here, as we have explained, we construe the language of the relevant contractual provision otherwise.

We decline to announce a holding in this case that would be at odds with the American rule as to attorney's fees, our prior decisions establishing that a request for attorney's fees based on a contract provision is part of the damages claim under the contract and the well-settled principle that, absent express contractual language stating otherwise, the claims set forth in a contract merge at the time of judgment. Because the contract between the parties merged into the April 3, 2006

judgment, there is no basis for the June 12, 2008 award to appellee of attorney's fees incurred from April 3, 2006 through June 3, 2008 in the amount of $41,296.16. Accordingly, that order must be vacated.

## II

Appellant next assigns error to the trial court's award of post-judgment interest from the initial judgment date of June 27, 2000 because "the subsequent pleadings by [appellee] and rulings by the trial court on remand expressly considered additional evidence on the merits of [appellee's] breach of contract claims, and it was only through the trial court's March 30, 2006 entry of final judgment that all claims and disputes among all parties were finally and conclusively adjudicated."

Appellant posits that "[appellee's] overt efforts to increase its damages against [appellant], coupled with approximately nine years of appeals, reversals, modifications, and remands all worked to prevent the first June 27, 2000 judgment from having the finality required for post-judgment interest to begin to accrue." Appellant further asserts that the gravamen of its appeal is "the fact that, after this Court's first remand in which it partially vacated the trial court's award, [appellee] filed a new pleading whereby it sought to present new evidence to increase its contractual claim for an award of attorney's fees." Appellant offers the following summary of its position:

> When the history of [appellee's] repeated efforts to increase its judgment is viewed in light of the current posture of the case, it is clear that it was not until the trial court entered the March 30, 2006 final judgment, which was not appealed by any party, that all claims with respect to all parties arising out of the [appellee]/[appellant] Subcontract were finally and completely adjudicated. In fact, in the absence of any action by the trial court during the proceedings where a written order partially adjudicating the parties' claims was issued pursuant to Md. Rule 2–602(b), the very

existence of the March 30, 2006 final judgment is a necessary condition precedent to the trial court being able to rule on the question of when it contends post-judgment interest should be deemed to accrue.

Appellee, rejoining that the trial court did not abuse its discretion in awarding appellee's post-judgment interest from the original judgment date of June 27, 2000, refutes appellant's assertion that the finality of the original judgment obtained by appellee evaporated when, subsequent to this Court's first remand, appellee filed its request for additional attorney's fees. Appellee points out that Judge Woodward, in this Court's most recent opinion issued in this case (filed June 14, 2007), observed that neither of the two previous appeals and remands "altered the original judicial determination of [appellant's] liability to [appellee] for breach of contract and attorney's fees." *AccuBid III, supra,* slip. op. at 1.

Appellee summarizes its position as follows:

This issue is not complicated. The original judgment as to liability obtained by [appellee] on June 27, 2000 has never been reversed, modified or vacated. Accordingly, since June 27, 2000 one thing in this case has been a constant: [appellant] breached its contract with [appellee], and as a result has been liable to [appellee] for damages suffered as a result thereof. The only modification made to the trial court's original judgment was a reduction of a portion of interest carry damages originally awarded by the trial court. A reduction of damages is not tantamount to a reversal or vacation of the original judgment. More importantly, [appellant] continues to ignore the fact that, at no time throughout the nine (9) year history of this case, [appellant's] liability to [appellee] has never been extinguished.

Maryland Rule 2–604(b) provides that a money judgment shall "bear interest at the rate prescribed by law from the date of entry." Thereafter, post-judgment interest continues to accrue at the legal rate of ten percent per annum until the money judgment and accrued interest are satisfied. *See* Md.

Code (2006 Repl.Vol., 2008 Supp.), Cts. & Jud. Proc. (C.J.), § 11–107(a). Maryland Rule 2–601(b) provides that the date of judgment is the date on which the clerk of the court prepares a written record of the judgment. *See Carpenter Realty Corp. v. Imbesi,* 369 Md. 549, 558–59, 801 A.2d 1018 (2002) (citations omitted).

 "[W]hen determining the date of entry of judgment for purposes of postjudgment interest, we must evaluate the circumstances on a case-by-case basis, keeping the objective of the postjudgment interest rules in mind." *Mona v. Mona Elec. Group, Inc.,* 176 Md.App. 672, 730, 934 A.2d 450 (2007) (citing *Med. Mut. Liab. Ins. Soc'y of Maryland v. Davis,* 365 Md. 477, 484, 781 A.2d 781 (2001)). The purpose of post-judgment interest

> "is obviously to compensate the successful suitor for the same loss of the use of the monies represented by a judgment in its favor, and the loss of income thereon, between the time of entry of the judgment *nisi*—when there is a judicial determination of the monies owed it—and the satisfaction of the judgment by payment."

*Davis,* 365 Md. at 484–85, 781 A.2d 781 (quoting *I.W. Berman Prop. v. Porter Bros.,* 276 Md. 1, 24, 344 A.2d 65 (1975)). In *Carpenter,* 369 Md. at 560, 801 A.2d 1018, the Court of Appeals assessed "what constitutes the date of entry of a judgment where the first judgment in the action was reversed and remanded by the Court of Special Appeals, and subsequent judgments were entered on the record." The Court observed:

> Both this Court and the Court of Special Appeals have the ability to dispose of an appeal by dismissing the action, affirming the judgment, vacating or reversing the judgment, modifying the judgment, remanding the action to a lower court for further consideration, or any combination thereof. See Md. Rule 8–604(a). Furthermore, Maryland Rule 8–604(e) states, "in reversing or modifying a judgment in whole or in part, the Court may enter an appropriate judgment directly or may order the lower court to do so."

We have held that where our mandate specifically directs the entry of a judgment after remand, post-judgment interest on the award runs from the date of the issuance of the mandate. In the absence of a specific instruction from this Court to the trial court that the court must award post-judgment interest dating back to the entry of the original judgment, such an award should rest with the sound discretion of the trial court.

*Carpenter*, 369 Md. at 560–61, 801 A.2d 1018 (internal citation and footnote omitted). *See also Cohn v. Freeman*, 169 Md. App. 255, 270, 900 A.2d 283 (2006).

Thus, as in *Carpenter*, our first task is to determine the dates on which judgments were entered in this case. The trial court first entered a judgment against appellant on June 27, 2000, ordering that (1) judgment be entered in favor of appellee and Lionheart Limited Partnership on the complaint filed by appellant; (2) appellant's petition for a mechanic's lien be denied and (3) judgment be entered in favor of appellee on appellee's counterclaim against appellant in the amount of $30,000, plus $48,222 in attorney's fees, for a total amount of $78,222. Appellant appealed from the June 27, 2000 judgment and this Court, in an unreported opinion, affirmed the trial court's award of attorney's fees and the $30,000 damages award, with the exception of one element of damages, identified as "interest carry" damages, in the amount of $12,257.39. The mandate, issued on August 5, 2002, directed that the judgment of the circuit court be vacated in part and remanded "for damages to be *adjusted* in a manner consistent with this opinion." *See AccuBid I* (emphasis added). Contrary to appellant's assertion in its reply brief, our decision had no bearing on the substance of the judgment that appellant was liable, generally, to appellee for breach of contract and contractually-based attorney's fees.[7] Appellant's general liability

---

7. Appellant states in both its brief and reply brief that the basis for our reversal on the "interest carry" damages was our conclusion that appellant was not liable to Lionheart Limited Partnership for those damages. Thus, according to appellant, it was only at that point that a

in this case, thus, was conclusively determined as of the June 27, 2000 order.

The trial court's June 4, 2004 order (entered on June 8, 2004), revised the judgment, as directed by our unreported opinion and added $14,700 in attorney's fees in favor of appellee, rendering total judgment in the amount of $74,132.46. Subsequent to this order, appellant appealed the award of additional attorney's fees on the grounds that (1) the circuit court lacked the authority to award such fees following remand and (2) the evidence was insufficient to support the award. We reversed the award of attorney's fees on November 16, 2005 on the grounds of insufficient evidence and did not address appellant's first argument. *See AccuBid II.* The remainder of the circuit court's June 8 Order remained intact. We remanded to the trial court "for revision of judgment in accordance with this opinion" and ordered appellee to pay costs. *Id.* at 10.

The Mandate in *AccuBid II* was issued on December 16, 2005. It did not alter the original judgment entered on June 27, 2000, with regard to appellant's liability for breach of contract damages and attorney's fees. Rather, it disallowed the award of *additional* attorney's fees based on evidence arising after the initial judgment. Thus, on March 30, 2006, the circuit court issued another order (entered on the docket on April 3, 2006), reducing the judgment amount by $14,700 and an additional $5,686.10 for costs, leaving a judgment in the amount of $53,746.36. That judgment was filed on April 3, 2006. On September 12, 2006, the circuit court issued an order establishing that post-judgment interest accrue from June 27, 2000, "the original date of judgment."

---

final judgment could be rendered in this case, as it was only at that point, argues appellant, that all the claims by all of the parties were adjudicated. Appellant's argument may, to one unfamiliar with the proceedings in this case, obscure the nature of our holding in that opinion. We determined that the award to appellee (not Lionheart) of "interest carry" damages was improper because the damages claimed (1) related to a loan between Lionheart and a construction lender and (2) were never actually suffered by appellee. *See AccuBid I.*

█ Under the circumstances of this case, we perceive no abuse of discretion in the trial court's decision to award post-judgment interest dating back to the entry of the initial judgment. That June 27, 2000 judgment was a final judgment for purposes of appellate review. To be sure, post-judgment interest does not, by necessity, always begin to accrue "whenever a money judgment is entered and is final at the time of entry." *Davis,* 365 Md. at 484, 781 A.2d 781. We recognize that "Rule 2–604(b) must be applied to various situations in accordance with the purpose of post-judgment interest and the considerable case-law governing the running of post-judgment interest." *Id.* However, as we have explained, the preceding appeals in this case did not alter the essence of that original judgment, which conclusively established appellant's liability for breach of contract damages and attorney's fees.

We agree with appellee that the cases upon which appellant relies to argue otherwise are inapposite. *Cohn,* 169 Md.App. at 257–58, 900 A.2d 283, involved a suit for a share of partnership profits. The trial court issued a money judgment in favor of the plaintiff and, upon the defendants' subsequent appeal, we remanded for purposes of rendering factual findings that could alter the trial court's conclusion as to the core liabilities in the case. *Id.* at 258, 900 A.2d 283. In other words, the trial court is allowed, upon making those findings, to determine that the defendants were not liable to the plaintiff. *Id.* On remand, the circuit court rendered the required factual findings and resolved liabilities in favor of the plaintiff. *Id.* at 258–59, 900 A.2d 283. That judgment was rendered on November 13, 2003. *Id.* at 259, 900 A.2d 283. The defendants appealed once again and we affirmed the circuit court's judgment, observing that the purpose of the remand was "to give the defendants an opportunity to persuade the finder of fact" on certain matters, which they failed to do. *Id.* at 259–60, 900 A.2d 283. After our affirmance, a dispute arose between the parties as to the date from which post-judgment interest should accrue. According to the defendants, November 14, 2003, represented the appropriate accrual date. *Id.* at 261, 900 A.2d 283. The plaintiff argued

that post-judgment interest should be calculated from January 14, 2000, the date of the court's original decision. *Id.* at 261, 900 A.2d 283. The circuit court, citing to *Carpenter Realty Corp., supra*, agreed with the defendants. *Id.* at 261, 900 A.2d 283. On appeal of that judgment, we affirmed, reviewing the mandates issued in that case and holding that the mandate issued after the first appeal vacated the initial judgment as to core liabilities. We also remanded for factual findings that could have an impact on the ultimate outcome of the case, stating:

> In other words, the trial court's initial decision did not settle the dispute conclusively in appellant's favor because the decision was rendered on less than a complete factual analysis. To develop that factual basis, the findings of fact, on remand, were essential. Therefore, by vacating the judgment, it became void and appellee was not liable on the initial judgment entered.

*Id.* at 274, 900 A.2d 283.

Our affirmance in the second appeal left the court's November 13, 2003 judgment intact. *Id.* Thus, we concluded that post-judgment interest should accrue from the date of the circuit court's second judgment, or November 13, 2003. *Id.* By contrast, in this case, as this Court stated in the unreported opinion issued in *AccuBid III, supra*, slip op. at 1, the original judicial determination of appellant's liability to appellee for breach of contract and attorney's fees remained unaltered, notwithstanding two subsequent appeals and remands. Our decisions did not remand for purposes of reassessing liability; the outcome of the case, notwithstanding adjustments to the damages award, was established as of June 27, 2000.

Similarly, in *Carpenter Realty Corp.*, 369 Md. at 553, 801 A.2d 1018, the circuit court, on April 10, 1995, (1) entered judgment for the personal representative of a decedent's estate for debt owed under a stock redemption agreement, in the amount of $57,447.67, and (2) concluded that the defendant/counter-plaintiff had not established its right to set-off its

liability. On appeal, we reversed that judgment as to the issue of a set-off and remanded for a rehearing, *id.* at 554, 801 A.2d 1018, after which the circuit court found against the estate and extinguished its complaint. *Id.* at 554–55, 801 A.2d 1018. On appeal from that second judgment, we affirmed this ruling by the circuit court. The Court of Appeals, however, reversed our affirmance, *id.* at 555–56, 801 A.2d 1018, and the case was remanded a second time for further proceedings. *Id.* at 555–56, 801 A.2d 1018. The circuit court's judgment, issued subsequent to the second remand, did not include, *inter alia,* post-judgment interest, despite the estate's request for such. *Id.* at 556–57, 801 A.2d 1018. The estate appealed and we held that the estate was entitled to post-judgment interest from April 2005, the date of the original verdict in its favor. *Id.* at 558, 801 A.2d 1018. The Court of Appeals concluded that post-judgment interest should accrue from October 19, 2000, or the date on which the circuit court, upon second remand, issued its judgment, because the first judgment was nullified by our reversal. *Id.* at 567, 801 A.2d 1018. The Court reviewed the mandates issued for each appeal in the case and concluded that our mandate after the first appeal "did not contain any language restricting the effect of the reversal so as to leave the original judgment in place," adding that "[n]either [the Court of Appeals] mandate disposing of the appeal, nor the text of the opinion as a secondary source specified any intention to have post-judgment interest accrue from the date of the original judgment." *Id.* at 562–63, 801 A.2d 1018.

Appellant attempts to analogize *Carpenter Realty* to the facts of this case by arguing that, "[a]s was the case in *Carpenter Realty,* additional factfinding occurred on remand and separate and distinct determinations of liability occurred, namely, the court entertained new evidence of [appellant's] liability for additional attorney's fees arising out of the contract." We disagree with appellant's argument. In *Carpenter Realty,* the court assessed the language of the relevant mandates and observed that, where ambiguous, one may look to the opinion and surrounding circumstances to determine the

intent of the court. *Id.* at 561–62, 801 A.2d 1018 (citing *Balducci v. Eberly,* 304 Md. 664, 670, 500 A.2d 1042 (1985)). The *Carpenter* Court also observed:

> It has been held that the effect of a general and unqualified reversal of a judgment, order or decree is to nullify it completely and to leave the case standing as if such judgment, order or decree had never been rendered, except as restricted by the opinion of the appellate court." *Balducci,* 304 Md. at 671 n. 8, 500 A.2d at 1046 n. 8. The Court of Special Appeals's opinion and mandate of August 6, 1996 which reversed the original judgment and remanded the case to the Circuit Court did not contain any language restricting the effect of the reversal so as to leave the original judgment in place.

*Id.* at 562, 801 A.2d 1018 (quoting *Balducci,* 304 Md. at 671 n. 8, 500 A.2d 1042).

By contrast, here, the language of our December 16, 2005 Mandate indicated that the original judgment as to liability on the breach of contract and attorney's fees claim was to remain unaltered:

> PORTION OF ORDER DATED JUNE 4, 2004 AWARDING ATTORNEY'S FEES IN THE AMOUNT OF $14,700 REVERSED. CASE REMANDED TO CIRCUIT COURT FOR FREDERICK COUNTY FOR REVISION OF JUDGMENT IN ACCORDANCE WITH THIS OPINION. COSTS TO BE PAID BY APPELLEE.

As we have explained, this mandate did not extinguish the original judgment; rather, it disallowed a specific determination as to additional attorney's fees made subsequent to that original judgment that was not supported by additional evidence.[8]

---

8. Appellee argues that this case is similar to *Davis,* 365 Md. 477, 781 A.2d 781, but we find that case factually and procedurally different. The *Davis* case was limited to determining "when post-judgment interest begins to accrue on a money judgment for tort damages, based on a jury verdict, when the judgment is subsequently reduced, via a remittitur, by the trial court." 365 Md. at 478, 781 A.2d 781. Similarly,

■ Appellant also asserts that the fact that appellee filed a new pleading after the March 30, 2006 order requesting additional attorney's fees is "critical" to resolving this issue, because it was "tantamount to the filing of an amended complaint well after the conclusion of the original trial on all matters." The purpose of the statutory provisions for post-judgment interest, however, is to compensate the prevailing party for the loss of the use of monies represented by a judgment in its favor. Since June 27, 2000, appellee has been without the use of monies awarded as a result of appellant's liability for breach of contract—liability that was never determined to be unsustained in successive appeals, notwithstanding adjustments to the amounts owed on that liability. That we determined appellee's attempt to seek *additional* attorney's fees to be unsuccessful for lack of sufficient evidence does not alter or extinguish that original judicial determination.

In light of the foregoing discussion, we affirm the trial court's judgment establishing the date of accrual for post-judgment interest as June 27, 2000.

**ORDER OF CIRCUIT COURT FOR FREDERICK COUNTY ESTABLISHING DATE OF ACCRUAL FOR**

---

*Mona v. Mona Elec. Group, Inc.*, 176 Md.App. 672, 934 A.2d 450 (2007), upon which appellee relies, is distinguishable from this case, in that it addressed determining the accrual date of post-judgment interest where a trial court enters a judgment notwithstanding the verdict and revises the judgment after the original jury verdict by reducing the amount of damages owed to the prevailing party. *See Mona*, 176 Md.App. at 683–84, 727–28, 730, 934 A.2d 450. *Aronson & Co. v. Fetridge*, 181 Md.App. 650, 957 A.2d 125 (2008), cited to by appellee, similarly does not address the factual and procedural particularities of this case.

While general principles regarding the awarding of post-judgment interest discussed in those cases are applicable here, we view our decision in *Great Coastal Express, Inc. v. Schruefer*, 39 Md.App. 88, 93, 383 A.2d 74 (1978), to be more on point. On a second appeal in that case, we held that post-judgment interest accrued from the verdict that preceded the first appeal, because "the verdicts in favor of plaintiffs below remained wholly undisturbed and unaffected by the technical requirement of our mandate [issued during the first appeal] that the judgments be 'vacated and [case] remanded for modification and entry of proper judgments in accordance with this opinion.'"

POST–JUDGMENT INTEREST AS JUNE 27, 2000 AF-FIRMED; ORDER OF THAT COURT AWARDING ADDI-TIONAL ATTORNEY'S FEES IN FAVOR OF APPEL-LEE IN THE AMOUNT OF $41,296.16 REVERSED.

COSTS TO BE PAID ONE–HALF BY APPELLANT AND ONE–HALF BY APPELLEE.