# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| CAYOU QUAY MARINA, L.L.C., | No. 80828-1-I |
| Appellant, | |
| v. | DIVISION ONE |
| ROBERT B. CONNOR JR., MARGARET CONNOR, and their marital community, | UNPUBLISHED OPINION |
| Respondents. | |

COBURN, J. — Judgment creditor Cayou Quay Marina, L.L.C. (CQM) appeals from a trial court order denying its motion for post-judgment collection costs and attorney fees. CQM asserts that the superior court erred in concluding that the judgment merged with the underlying promissory note and that the note does not provide for post-judgment costs and fees. We affirm.

## FACTS

Robert Connor Jr. and Margaret Connor (the Connors) obtained a loan from CQM in the amount of $250,000. The loan was documented by a promissory note dated February 27, 2007. The standard form note provided:

> This note shall bear interest at the rate of six percent per annum after maturity or after failure to pay any interest payment, and if this note shall be placed in the hands of an attorney for collection or if suit shall be brought to collect any of the principal or interest of this note, I promise to pay reasonable attorney fees.

As security for the note, the Connors granted CQM a deed of trust, recorded on March 2, 2007, on one of their real properties (the "Industrial Parcel").

On May 21, 2009, CQM filed a claim for breach of contract against the Connors for failing to pay the note. CQM moved for summary judgment on the breach of the note and requested an award of the outstanding principal, accrued interest, and "reasonable attorney fees it has incurred in this action."

On August 21, 2009, the superior court entered a stipulation and order of dismissal and judgment in favor of CQM against the Connors (2009 judgment). The 2009 judgment awarded CQM $250,000 in outstanding principal, $37,191.98 in interest accruing to the date of judgment, $3,132 in attorney's fees, and $257.25 in costs. Although the promissory note set the annual interest rate at 6 percent, the 2009 judgment provided that "attorney's fees, costs, and other recovery amounts shall bear interest at 12 percent per annum."[1]

On September 18, 2009, the superior court granted CQM's motion for an order requiring the Connors to answer written interrogatories and testify as to available assets to satisfy the 2009 judgment. On October 22, 2009, the Connors filed for Chapter 13 bankruptcy, which stayed collection on the note. CQM retained counsel to oppose the bankruptcy action. The bankruptcy proceeding was dismissed in March 2010.

On April 12, 2010, CQM filed a judgment lien on the Industrial Parcel and moved for a decree of foreclosure to enforce the 2009 judgment pursuant to RCW 4.56.190 and RCW 61.12.060. CQM also contemporaneously recorded lis pendens on several

---

[1] The discrepancy between the interest rate in the note and the 2009 Judgment is not at issue in this appeal.

other properties owned by the Connors based on another lawsuit brought by CQM against the Connors regarding a different matter. The Connors opposed the decree of foreclosure on the grounds that CQM had relied on an improper statutory foreclosure process and failed to exercise statutorily required due diligence.

On May 19, 2010, the superior court entered findings of fact, conclusions of law, and a decree of foreclosure. Regarding the foreclosure process, the superior court found:

> 10. The parties have stipulated that Plaintiff may foreclose upon said lien pursuant to RCW 4.56.190 and RCW 61.12.060, providing Plaintiff complies with RCW 6.17.100 and RCW Chapter 6.21, and that the period of redemption required by RCW 6.23.020(1) is one year. Further, Defendants reserve the right under RCW 61.12.060 to request an upset price and/or fair value hearing.

Regarding attorney's fees and costs, the superior court found:

> 11. Under the terms of the Note, plaintiff is entitled to costs of collection. Some costs of collection were addressed in the judgment; however, since the date of judgment, plaintiff has incurred further costs of collection by its post-judgment collection action, which continued in the bankruptcy proceeding.
>
> 12. Further collection costs may be incurred in the continued prosecution in this case to collect upon the judgment; however, there is no reason to hold up the foreclosure proceeding pending a final tally of the collection costs that plaintiff has incurred.
>
> 13. Further collection costs may be compiled and presented to the court at a later date for a determination as to the reasonableness of the same. There is no reason to delay the entry of a Decree of Foreclosure at this time pursuant to RCW 4.56.190.

CQM did not move for its fees.

The following day, counsel for CQM notified counsel for the Connors that it did not believe a sheriff's sale of the Industrial Parcel would yield enough to satisfy the 2009 judgment. The Connors' counsel responded that foreclosure would not be necessary

because it had found a buyer for one of their other properties, and the sale would satisfy the full amount of the 2009 judgment. The Connors asked CQM to subordinate its lis pendens to financing so they could close the sale and satisfy the 2009 judgment. Although the property was listed for $1,250,000, CQM responded that it would agree to subordinate the lis pendens to financing up to only $250,000.

On May 25, 2010, CQM moved for an order of sale for the Industrial Parcel. In the motion, CQM argued that the minimum or "upset price" for the auction sale of the property should be $50,000, which was an amount representing 25 percent of the county's assessed value. CQM also requested "attorney fees and costs incurred in collecting the sum due under the Note" in the amount of $36,426.88. The Connors argued that the court should fix an upset price based upon fair market value. At a hearing on June 18, 2010, the superior court ruled that a fair value hearing to set an upset price was required.

On July 20, 2010, the court issued a letter ruling setting the upset price at $450,000. The letter ruling did not address CQM's request for post-collection fees and costs. CQM did not seek a judgment for attorney fees at this time. On November 29, 2010, the court entered an order of sale/ writ of execution and findings of fact and conclusions of law to establish the upset price for the order of sale. Amended findings were entered on December 7, 2010. A sheriff's sale took place on February 11, 2011, but there were no bidders.

In 2013, the parties' separate litigation resulted in a jury verdict and entry of judgment in favor of the Connors. On July 3, 2014, CQM moved to set off the parties' respective judgments, establish the remaining balance of the 2009 judgment, and

amend CQM's judgment liens accordingly. CQM's motion included a request for "attorneys fees and costs of $21,830.48 [incurred] in actions to execute the judgment."

On July 25, 2014, in accordance with the parties' stipulation, the court entered an order offsetting the judgments (2014 stipulation and order). The stipulation provided in pertinent part:

> The promissory note on which the August 21, 2009 Judgment in Cause No. 09-2-05097-1 is based provides that Plaintiff is entitled to its costs of collection of all amounts due. In addition to the principal amount of the August 21, 2009 Judgment and interest on the Judgment to July 18, 2014, Cayou Quay Marina, LLC has incurred attorneys fees and costs in actions to execute and collect on that Judgment. The amount of Cayou Quay Marina LLC's recoverable attorneys fees and costs of collection after the date of the August 21, 2009 Judgment is not included in the "net" $320,947.01 amount due CQM from Robert B. Connor and Margaret Connor on the two Judgments as of July 18, 2014. … The determination of the amount of Cayou Quay Marina LLC's recoverable attorneys fees and costs of collection, and the total amount due on the August 21, 2009 Judgment after including CQM's allowable costs of collection after August 21, 2009, is reserved for either further stipulation of Plaintiff and Defendants or, failing the parties' stipulation, to determination by the Court upon a hearing on Plaintiffs allowable collection costs to the date of that hearing.

Pursuant to the parties' stipulation, the order specified:

> Plaintiff, Cayou Quay Marina LLC, may submit an application for the Court to determine, as of July 18, 2014 or a later specified date, the remaining amount of the Judgment entered August 21, 2009 in Cause No. 09-2-05097-1 to the date specified in the Court's further order:
> (A) After the set-off of $140,830.05 described in paragraphs 2 and 3 above.
> (B) With the addition of Plaintiff's reasonable costs of collection of its Judgment in Cause No. 09-2-05097-1 since the entry of that Judgment to the date specified in the Court's further order, such reasonable costs of collection to be either in the amount agreed by further stipulation of Plaintiff and Defendants or, failing the parties' stipulation, in the amount determined by the Court after a hearing on Plaintiffs' allowable collection costs.

> Plaintiff, Cayou Quay Marina LLC, may incur additional costs of collection of its Judgment in Cause No. 09-2-05097-1 after the date of this Order, and may apply to the Court for modification of the amount of its Judgment

5

in Cause No. 09-2-05097-1 to include such additional costs of collection as the Court may then determine to be allowable.

On August 1, 2019, approximately five years after entry of the 2014 stipulation and order, CQM filed an amended application for extended and amended judgment seeking (1) an extension of the 2009 judgment for 10 years and (2) recovery of $72,801.21 in post-judgment collection costs and fees, $68,877.98 in interest thereon, and $175,495.02 in interest on the judgment since the 2014 stipulation and order. The Connors did not oppose extending the 2009 judgment for 10 years. However, they argued that amending the 2009 judgment to include an award of post-judgment fees and costs was improper.

On October 17, 2019, the court issued a detailed written letter opinion denying CQM's application to amend the 2009 judgment. The court ruled that, pursuant to the merger rule, the obligation contained in the note to pay attorney fees and costs related to collection actions merged into the 2009 judgment and ceased to exist. In the alternative, the court ruled that CQM's claim for collection costs under the note was barred by the six-year statute of limitations for written contracts, that the 2014 stipulation and order did not establish entitlement to post-judgment collection fees and costs, and that CQM would not have been entitled to collect such fees and costs because it was not the prevailing party in its post-judgment actions. Accordingly, on November 6, 2019, the court entered an order granting CQM's application to extend the 2009 judgment for a ten-year period and denying CQM's request to include post-2009 judgment collection fees and costs in its extended judgment. CQM appealed.

<u>ANALYSIS</u>

No issue of fact is presented in this appeal; it solely concerns issues of law. We therefore review the trial court's decision de novo.[2] <u>In re Trustee's Sale of Real Property of Ball</u>, 179 Wn. App. 559, 562, 319 P.3d 844 (2014).

"The general rule in Washington is that attorney fees will not be awarded for costs of litigation unless authorized by contract, statute, or recognized ground of equity." <u>Durland v. San Juan County</u>, 182 Wn.2d 55, 76, 340 P.3d 191 (2014). CQM argues that the attorney fee provision in the note specifically entitles it to recover all of its collection fees and costs whether those fees were incurred before or after entry of the judgment. The Connors assert that the trial court properly applied the merger rule to bar CQM's request for post-judgment collection costs and fees.[3] We agree with the Connors. In <u>Caine & Weiner v. Barker</u>, 42 Wn. App. 835, 836-37, 713 P.2d 1133 (1986), this court succinctly described the basis and application of the merger rule as follows:

> Claim preclusion, or *res judicata,* has two aspects. The first applies to a judgment for a defendant, barring the plaintiff from bringing another action on the same claim. The second aspect is the rule of merger, which applies generally to a judgment for a plaintiff in an action to recover

---

[2] The Connors agree that issues of law are reviewed de novo but argue that this court's review of the trial court's exercise of its equitable authority and applicability of the affirmative defense of waiver are reviewed for abuse of discretion. But the issues presented for review implicate the court's application of an equitable legal doctrine not its exercise of discretion to fashion injunctive relief or to rule on a motion to strike an affirmative defense. In any case, we would reach the same conclusion under either standard of review.

[3] As an alternative basis for affirming the trial court, the Connors also argue that (1) CQM's current claim for post-judgment collection costs under the note is barred by the six-year statute of limitations for written contracts and (2) CQM is not entitled to an award of fees because it was not the prevailing party in the foreclosure proceeding. Because the merger rule resolves this matter, we need not address these arguments.

money. As a general rule, when a valid final judgment for the payment of money is rendered, the original claim is extinguished, and a new cause of action on the judgment is substituted for it. Thereafter, the plaintiff cannot maintain an action on the original claim or any part thereof.

42 Wn. App. at 837.

In Caine, the judgment creditor obtained a default judgment against co-makers Barker and Wise on a promissory note. 42 Wn. App. at 836. The note at issue provided that "in case suit is instituted to collect this note or any portion thereof, [w]e promise to pay ... reasonable ... Attorney's fees in said suit." Id. After Wise paid the judgment in full, including an award of attorney fees, the judgment creditor assigned its judgment to Wise so he could pursue collection from Barker. Id. After Wise collected from Barker, he brought a post-judgment motion seeking to recover the costs of collection pursuant to the attorney fee provision of the promissory note. Id.

Applying the merger rule, the Caine court held that the trial court did not err in rejecting Wise's request for post-judgment attorney fees. 42 Wn. App. at 838. The court reasoned that when the debt was reduced to judgment, the debtors' former joint obligation on the note became an obligation on the judgment and the original claim in the note was extinguished. 42 Wn. App. at 838.

Here, in language almost identical to that of the promissory note in Caine, the note required the Connors to pay reasonable attorney fees "if this note shall be placed in the hands of an attorney for collection or if suit shall be brought to collect any of the principal or interest of this note." The note contains no express provision regarding post-judgment collection fees and costs. CQM brought suit in 2009 to collect principal and interest on the note and obtained a judgment that included an award of attorney fees and costs. CQM now seeks to enforce the 2009 judgment. Although the parties

could have included a provision in the note authorizing an award of post-judgment fees and costs, they did not do so. The trial court did not err in concluding that the attorney fee provision in the note merged into the 2009 judgment and was extinguished.

CQM asserts that Caine does not control because there, unlike here, the co-maker of the note satisfied the judgment in full before seeking post-judgment fees and costs from the other maker. But this was not an action between co-makers for contribution. Rather, Wise as assignee of the judgment, stood in the shoes of the judgment creditor. Because "the only attorney's fees that [the prior judgment creditor] had a right to recover were included in the default judgment," Wise had no right to collect post-judgment attorney fees from Barker. Id. The fact that Caine involved co-makers on a note, or that the judgment was paid in full before the assignee sought an award of post-judgment fees, is not material to application of the merger rule.

Woodcraft Const., Inc. v. Hamilton, 56 Wn. App. 885, 886, 786 P.2d 307 (1990) is also instructive in this regard. In Woodcraft, the creditor filed its partially satisfied Alaska judgment in Washington and sought to collect the unsatisfied portion from community property held by the judgment debtor's wife. The trial court found in favor of the wife and awarded her attorney's fees and costs pursuant to the terms of the promissory note underlying the judgment. 56 Wn. App. at 887. Citing Caine, the appellate court reversed and held that there was no basis for the award because the attorney fee provision in the underlying promissory note "merged into the judgment and ceased to exist." 56 Wn. App. at 888. CQM contends that Woodcraft is inapplicable to the case at bar because the wife did not sign the promissory note at issue. But there is no indication that the Woodcraft court based its decision on this fact. Rather, the court

9

simply applied the merger rule and concluded that there was no contractual basis for an award of fees.

CQM next asserts that equitable considerations warrant the application of an exception to the merger rule. The Caine court acknowledged that merger is an equitable doctrine that should be applied to promote justice:

> The merger rule is based in part upon the need to prevent vexatious relitigation of matters that have already passed into judgment as between the parties to the litigation and their successors. However, despite the general rule that underlying rights and obligations are extinguished by the judgment, the doctrine is designed to promote justice and should not be carried further than that end requires. Therefore, where the original obligation provides for special rights or exemptions, in some circumstances these may be preserved and recognized despite merger.

42 Wn. App. at 837.

CQM argues that the attorney fee provision in the note should survive merger because it is a "special right" that specifically entitles CQM to recover all of its collection costs and fees regardless of whether they were incurred before or after entry of the 2009 judgment. But the Caine court, applying a materially similar fee provision, did not conclude that the provision conferred a "special right" that survived merger. The note at issue in this case contains no language, express or implied, that warrants a different result. CQM further argues that applying the merger rule in this situation would not promote justice because the Connors' failure to pay their debt forced CQM to incur attorney fees and costs in pursuing collection on the judgment. CQM contends that affirming the trial court's ruling will create a precedent that allows judgment debtors to evade the collection of promissory notes reduced to judgment for as long as possible. However, if parties wish to preserve a judgment creditor's right to post-judgment costs of collection, they may expressly so provide in their contract or seek to include such an

10

award in their judgment. CQM did not do so here. The superior court did not err in refusing to apply an exception to the merger rule here.

CQM next argues that its request for post-judgment fees and costs is an ancillary claim that survived merger because the issue was not determined by the court when it reduced CQM's underlying claim to judgment. As previously discussed, principles of res judicata form the basis for general application of the merger rule. Caine, 42 Wn. App. at 836. The doctrine of res judicata promotes judicial economy, efficiency, and fairness to litigants. Emeson v. Dep't of Corrections, 194 Wn. App. 617, 626, 376 P.3d 430 (2016). "Res judicata applies to matters that were actually litigated and those that 'could have been raised, and in the exercise of reasonable diligence should have been raised, in the prior proceeding.' " DeYoung v. Cenex Ltd., 100 Wn. App. 885, 891-92, 1 P.3d 587 (2000). Pursuant to the merger rule, "a contractual duty is not discharged by judgment if its existence was not one of the issues determined by the court." 6A Corbin on Contracts § 1318 (1962). However, contrary to CQM's assertion, the Connors' attorney fee obligation pursuant to the note was actually litigated and determined by the trial court in the 2009 judgment. That obligation, along with the obligation to pay the underlying debt, merged into the judgment and no longer exists. Accordingly, the majority of courts to have considered the issue hold that contractual attorney fees must be litigated as part of the underlying claim and do not survive merger. See, e.g. Accubid Excavation, Inc. v. Kennedy Contractors, Inc., 188 Md. App. 214, 981 A.2d 727 (2009); Allison v. John. M. Biggs, Inc., 121 Idaho 567, 826 P.2d 916 (1992). CQM urges us to follow Illinois courts in holding that the doctrine of merger does not apply to a prevailing plaintiff's motion to recover attorney's fees incurred in post-judgment

proceedings. See, e.g. Stein v. Spainhour, 196 Ill.App.3d 65, 533 N.E.2d 73 (1990); Poilevey v. Spivack, 368 Ill.App.3d 412, 857 N.E.2d 834 (2006). We decline to depart from the general rule already recognized by Washington courts in Caine and Woodcraft.

CQM next argues that the Connors waived their merger defense by failing to raise the argument in 2010 when the trial court issued the decree of foreclosure or in 2014 when stipulation and order was entered. In general, a defendant may waive an affirmative defense if either (1) assertion of the defense is inconsistent with defendant's prior behavior or (2) the defendant has been dilatory in asserting the defense. Lybbert v. Grant County, 141 Wn.2d 29, 39, 1 P.3d 1124 (2000). However, as the trial court correctly noted, merger is not an affirmative defense that must be pled in an answer pursuant to CR 12(b). The Connors were not squarely presented with an opportunity to assert the defense until 2019 when CQM finally sought to pursue an order for post-judgment collection costs.

Lastly, CQM asserts that the Connors should be equitably estopped from invoking merger as a bar to its claim for post-judgment fees and costs based on the 2010 decree of foreclosure and the 2014 stipulation and order. "Equitable estoppel is based on the principle that: 'a party should be held to a representation made or position assumed where inequitable consequences would otherwise result to another party who has justifiably and in good faith relied thereon.' " Kramarevcky v. Dep't of Soc. & Health Servs., 122 Wn.2d 738, 743, 863 P.2d 535 (1993). "The elements of equitable estoppel are: '(1) an admission, statement or act inconsistent with a claim afterwards asserted, (2) action by another in [reasonable] reliance upon that act, statement or admission, and (3) injury to the relying party from allowing the first party to contradict or repudiate the

prior act, statement or admission.' " Lybbert, 141 Wn.2d at 35 (alteration in original) (quoting Bd. of Regents of U.W. v. City of Seattle, 108 Wn.2d 545, 551, 741 P.2d 11 (1987)).

CQM asserts that the 2010 order of foreclosure and the 2014 stipulation and order both expressly contemplated that CQM could recover fees and costs incurred in recovering the principal and interest due under the note with the exact sums to be determined later. The 2010 foreclosure order stated that "[u]nder the terms of the Note, plaintiff is entitled to costs of collection" and "[f]urther collection costs may be compiled and presented to the court at a later date for a determination as to the reasonableness of the same." And the 2014 stipulation and order provided that CQM "may apply to the Court for modification of the amount of its judgment in Cause No. 09-2-05097-1 to include such additional costs of collection as the Court may then determine to be allowable." However, neither of these orders expressly state that the Connors agreed that CQM was legally entitled to receive an award of post-judgment collection costs, nor has CQM shown that it acted in reliance upon the Connors' supposed promise to pay post-judgment fees and costs in acting to collect on its sizable judgment. To the extent that CQM contends that it would be injured if the Connors are allowed to evade paying post-judgment fees and costs, CQM contributed to the situation of which it complains by waiting nearly 10 years after the 2009 judgment was entered and 5 years after the 2014 stipulation and order was entered to pursue an order for collection costs.

Similarly, CQM has not shown that reversal is otherwise warranted on equitable grounds. CQM did not include a provision for post-judgment collection costs and fees in the note. Although the trial court indicated in 2010 and 2014 that CQM could apply for

13

such fees, it did not actually do so until 2019.  At that time, CQM obtained a 10-year extension on the judgment, which continues to accrue interest at the rate of 12 percent per year.

In sum, the trial court did not err in concluding that the attorney fee provision in the promissory note merged into the 2009 judgment and was extinguished.  No basis exists for an award of post-judgment collection costs.

Pursuant to RAP 18.1, CQM requests an award of attorney fees and costs incurred for this appeal.  We may award attorney fees under RAP 18.1(a) if applicable law grants to a party the right to recover reasonable attorney fees and if the party requests the fees as prescribed by RAP 18.1.   We deny CQM's request for fees on appeal.

Affirmed.

_____
Coburn, J.

WE CONCUR:

_____          _____
Bowman, J                        Chun, J.

14